DECISION AND JUDGMENT ENTRY
Aaron W. Smith appeals the judgment of the Ross County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child. Smith asserts that tampering with evidence and obstruction of justice are allied offenses of similar import, and therefore that his conviction for both constitutes error. Because the elements of tampering with evidence and obstruction of justice do not correspond to such a degree that the commission of one crime will result in the commission of the other, we disagree. Smith next contends that the trial court abused its discretion when it ordered him to serve his sentences consecutively. Because the trial court was in the best position to determine the disposition necessary to rehabilitate Smith and Smith did not show that the commitments are aimed to punish him instead of rehabilitate him, we disagree. Finally, Smith contends that he did not receive effective assistance of counsel. Because Smith did not show that his trial counsel performed deficiently or that he suffered prejudice as a result of his counsel's performance, we disagree. Accordingly, we affirm the judgment of the trial court.
 I.
The trial court adjudicated Smith to be a delinquent child for violating R.C. 2921.12, tampering with evidence; R.C. 2921.32(A)(4), obstruction of justice; and R.C. 2927.01(B), abuse of a corpse. Each crime constitutes a felony of the third degree when committed by an adult.
The charges against Smith arose after he helped his friend, John Tyler McCoy, hide the body of Natasha Looney in a remote grassy field on May 31, 2000. McCoy kidnapped, raped and murdered Natasha that afternoon. In the early evening, McCoy picked up Smith at his home. Shortly thereafter, McCoy pulled over and showed Smith Natasha's body in the trunk of the car. McCoy and Smith drove around for several hours without discussing the body in the trunk.
Around 10:30 p.m., McCoy and Smith drove by John Sweeney's house. Sweeney and John Rackley, both friends of Smith, were standing in the driveway. McCoy stopped, and the four conversed for about ten minutes. Sweeney and Rackley both noticed that Smith's eyes were dilated and that he looked pale, which they attributed to drug use at the time, but later testified that he looked more scared than high. Rackley left with McCoy and Smith. Sweeney stayed behind because his parents had grounded him.
Rackley stated that McCoy pulled over and showed him the body in the trunk, just as McCoy had done with Smith. McCoy did not threaten Rackley, but Rackley felt scared and knew he couldn't outrun McCoy. Back in the car, the three discussed what to do with Natasha's body. Rackley observed Smith holding a large knife.
Rackley testified at trial that McCoy drove them to a deserted road and ordered him and Smith to help him with the body. A brief discussion ensued in which both Smith and Rackley expressed unwillingness to touch Natasha's body. Ultimately, McCoy and Smith carried the body away from the road while Rackley lit the way for them with a flashlight.
On June 3, 2000, the owner of the property where McCoy, Smith and Rackley left Natasha discovered her body. Police suspected McCoy, as he was the last person seen with Natasha. The first time police interviewed Smith, they were unaware of his involvement and did not consider him a suspect. Smith denied having any knowledge of Natasha's murder.
The police interviewed Smith several more times as they gathered evidence and began to consider him a suspect. Smith first admitted to being present when McCoy disposed of the body, but denied getting out of the car. He later admitted to getting out of the car, but said that he only held the flashlight while the others carried the body. Finally, he admitted that he helped move the body, but stated that he did so because he was scared. Smith did not mention that McCoy had a weapon or threatened him in his police interviews. At trial, Smith testified that McCoy ordered him to help dispose of Natasha's body and threatened him with a gun and a wrench.
After a trial at which Sweeney, Rackley, Smith, and police detectives testified, a magistrate adjudicated Smith to be a delinquent child and ordered a pre-disposition investigation report and victim impact statement. At the dispositional hearing, the magistrate ordered that Smith be committed to the Department of Youth Services ("DYS") for a term of six months on each count, to be served consecutively, until he reaches his twenty-first birthday. The trial court entered judgment on each charge, adjudicating Smith to be a delinquent child and imposing the disposition as set forth in the magistrate's orders.
Smith's counsel did not enter objections to the adjudication of delinquency on both tampering with evidence and obstruction of justice as allied offenses of similar import. Nor did counsel enter objections to the consecutive commitments on the charges.
Smith appeals the adjudication and disposition, asserting the following assignments of error:
The trial court committed prejudicial error, abused its discretion, and violated the minor child's statutory rights under R.C. 2941.25 and his rights under the due process and double jeopardy clauses of the Ohio and United States constitutions when it adjudicated him delinquent and committed him to consecutive terms for both tampering with evidence, under R.C. 2921.12(A)(1), and obstructing justice under, (sic) R.C.2921.32(A)(4).
The trial court abused its discretion and violated appellant's rights under the due process clauses of the Ohio and United States constitutions when it committed appellant to three consecutive terms of six months to the attainment of age twenty-one.
Trial counsel's failure to object to the violations of R.C. 2941.25(A) * * *, as well as her failure to object to the disposition as an abuse of discretion constitute ineffective assistance of counsel and deprived appellant of his rights under the Fourteenth Amendment to the United States Constitution and Section 16, Article One of the Ohio Constitution.
 II.
In his first assignment of error, Smith argues that the trial court erred by refusing to merge the count of obstructing justice with the count of tampering with evidence. Smith contends that under the test set forth in Newark v. Vazirani (1990), 48 Ohio St.3d 81, the offenses are allied offenses of similar import and thus, the trial court could only convict and sentence him on one of the two charges.
Allied offenses of similar import are governed by R.C. 2941.25, which provides:
 Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In State v. Rance (1999), 85 Ohio St.3d 632, the Ohio Supreme Court established the applicable analysis for determining whether the multiple-count statute prohibits separate punishment for two offenses. Prior to Rance, Ohio courts facing a merging offenses question used the test set forth in Vazirani, in which the court compared the elements of the two crimes charged by reference to the particular facts alleged in the indictment. In Rance, the court reconsidered whether the elements test should be conducted in terms of the facts of the specific case or in terms of the statutory elements of the offenses in the abstract and ruled that an analysis of the elements in the abstract was proper, thus overruling Vazirani. Rance at paragraph one of the syllabus.
Under Rance, the first step is to determine whether the offenses are allied offenses of similar import within the meaning of R.C. 2941.25. Two offenses are "allied" if the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other * * *.'" Id. at 636, quoting State v. Jones (1997),78 Ohio St.3d 12, 13; see, also, State v. Blankenship (1988),38 Ohio St.3d 116, 117. The court must compare the elements of the offenses in the abstract. Rance at paragraph one of the syllabus. In other words, the court must look at the statutory elements of the crimes involved without considering the particular facts of the case. Id. at 636-638. If the crimes do not so correspond, the court's inquiry ends: the crimes are considered offenses of dissimilar import and the defendant may be convicted and sentenced for both. Rance at 636, citing R.C.2941.25(B). If the elements do correspond in the manner described, the court must proceed to a second step. The court must review the defendant's conduct to determine if he committed the crimes separately or with a separate animus for each crime; if so, the defendant may be convicted of both. See Jones at 14; Blankenship at 117.
In this case, Smith faced charges of obstruction of justice in violation of R.C. 2921.32(A)(4) and tampering with evidence in violation of R.C. 2921.12(A)(1). R.C. 2921.32(A) provides in part that "no person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime * * * shall * * * destroy or conceal physical evidence of the crime or act * * *." R.C. 2921.12(A)(1) provides that no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall "alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability asevidence in such proceeding or investigation."
Smith maintains that the offenses of obstructing justice and tampering with evidence contain similar elements. In another case dealing with the disposal of a body, the Twelfth District engaged in a detailed comparison of the offenses of obstruction of justice and tampering with evidence. See State v. Baker (2000), 137 Ohio App.3d 628. The Baker court reasoned:
 It is undisputed that both R.C. 2921.12(A)(1) and 2921.32(A)(4) involve the destruction or concealment of evidence. However, tampering with evidence also includes the alteration of evidence, which obstructing justice does not. Tampering with evidence also clearly requires the offender to know that an official proceeding or investigation is either in progress or likely to be instituted. No such knowledge is required for obstructing justice. The offender's purpose for destroying or concealing evidence is also very different. Tampering with evidence requires the offender to destroy or conceal evidence for the very purpose of impairing its value or availability as evidence in the official proceeding or investigation. Obstructing justice, on the other hand, requires the offender to destroy or conceal evidence for the specific purpose of either assisting another person to benefit from the crime or hindering the discovery, apprehension, prosecution, conviction, or punishment of that other person. Finally, when it comes to the evidence being destroyed or concealed, one offense is very specific while the other is general in nature: under R.C. 2921.32(A)(4) (Obstructing Justice), the evidence must be the physical evidence of the crime, whereas the evidence under R.C. 2921.12(A)(1) (Tampering with Evidence) is any record, document, or thing. We therefore find that the elements of R.C. 2921.32(A)(4) and 2921.12(A)(1) do not correspond to such a degree that the commission of one crime will result in the commission of the other.
Baker at 657.
The Baker court went on to hold that the offenses of tampering withevidence and obstructing justice are not allied offenses of similar import. Based on the foregoing thorough application of R.C. 2941.25 in accordance with the Ohio Supreme Court's directives in Rance, we agree. Therefore, we overrule Smith's first assignment of error.
 III.
In his second assignment of error, Smith asserts that the trial court abused its discretion by imposing three consecutive terms of commitment to the DYS upon him for the single act of helping McCoy dispose of Natasha's body. Specifically, Smith contends that the trial court imposed consecutive terms with the goal of punishing him rather than rehabilitating him.
Pursuant to R.C. 2151.355(A)(4), when a child is adjudicated a delinquent child for committing an act that would be a felony of the third, fourth, or fifth degree if committed by an adult, the court may commit the child to the legal custody of the DYS for a minimum period of six months and a maximum period not to extend beyond the child's twenty-first birthday. If the child is adjudicated a delinquent child for committing two or more acts that would be felonies if committed by an adult, the court "may order that all of the periods of commitment imposed under those divisions for those acts be served consecutively." R.C.2151.355(B)(3). See, also, In re Caldwell (1996), 76 Ohio St.3d 156
(holding that R.C. 2151.355 provided the court with the power to impose consecutive terms of commitment even before the General Assembly amended the statute to explicitly provide the court with such authority.)
As Smith concedes, a trial court has broad discretion when making dispositional determinations in delinquency proceedings. R.C. 2151.355. The trial court has the advantage of having "the opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved."Caldwell at 161. This court will reverse the trial court's dispositional determination only upon a showing of an abuse of discretion. Id.; In reSamakas (1992), 80 Ohio App.3d 240, 245. An abuse of discretion is more than a mere error of law; it refers to an action by the court that is arbitrary, unreasonable or unconscionable. Samakas at 245.
In determining what disposition of a delinquent child will best meet the goal of rehabilitating the child, the trial court "must look at not only the delinquent act but also the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile and other societal factors that determine what length of commitment is appropriate for rehabilitation." Caldwell at 160. "A child who commits two separate robberies, each with a single victim on two separate days may need less rehabilitation than a child who robs ten different people in a store at one time." Id. Some juveniles simply demonstrate more serious criminal tendencies than others. Id. at 161. To ensure balance between the goals of adequately rehabilitating the child and avoiding imposing punishment upon the child, the court maintains the authority to grant the early release of a delinquent who demonstrates that he has been rehabilitated before the minimum commitment period ends. R.C. 2151.38;Caldwell at 160.
In this case, Smith's delinquent act consisted of helping his friend dispose of the corpse of a girl, scarcely thirteen years old, whom his friend had kidnapped, raped, and brutally murdered. When questioned by police, Smith initially denied any knowledge. Even when Smith admitted to assisting McCoy, he downplayed his involvement, first asserting that he did not get out of the car, and then asserting that he only held the flashlight, before finally admitting that he helped carry Natasha's body from the trunk to the weeds. Smith resisted taking responsibility for his actions by continually changing the story he told police, progressively adding more and more coercion by McCoy, until he testified at trial that he had no choice but to help McCoy because McCoy had threatened him with a gun and a large wrench.
Based upon these factors, we cannot find that the trial court acted arbitrarily, unreasonably, or unconscionably in determining that rehabilitation of Smith will require consecutive terms of commitment to the DYS. Thus, the trial court did not abuse its discretion. Accordingly, we overrule Smith's second assignment of error.
 IV.
In his final assignment of error, Smith asserts that he did not receive effective assistance of counsel. Specifically, Smith asserts that his trial counsel was ineffective because counsel failed to object to the magistrate's and the trial court's failure to merge his obstruction of justice and tampering with evidence convictions as allied offenses of similar import. Additionally, Smith asserts that counsel acted ineffectively in her failure to object to the dispositional entries calling for Smith to be committed for three consecutive six-month terms.
In reviewing a case for ineffective assistance of counsel, we apply the following test:
 Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
State v. Ballew (1996), 76 Ohio St.3d 244, 255, citing Strickland v.Washington (1984), 466 U.S. 668, 687.
As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. Counsel's failure to assert a meritless claim does not constitute ineffective assistance of counsel. State v. Nitenson (Feb. 24, 1994), Highland App. No. 91CA796, citing Thomas v. United States (8th Cir. 1991), 951 F.2d 902, 905. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v.Hasting (1983), 461 U.S. 499, 508-509.
In this case, we have already determined with regard to Smith's first and second assignments of error that his arguments regarding allied offenses and consecutive terms have no merit. Because these arguments have no merit, Smith's trial counsel's failure to raise the arguments below may be considered sound trial strategy, and certainly falls within the range of reasonable profession assistance. Therefore, we find that Smith's counsel provided him with competent, effective professional assistance. Accordingly, we overrule Smith's third assignment of error.
 IV.
In conclusion, we find that tampering with evidence and obstruction of justice are not allied offenses of similar import. Additionally, we find that the trial court did not abuse its discretion by sentencing Smith to three consecutive terms of commitment to the Department of Youth Services. Finally, we find that Smith received effective assistance of counsel. Accordingly, we overrule Smith's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Harsha, J. : Concur in Judgment and Opinion.