[Cite as *In re E.T.H.*, 2019-Ohio-79.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NO. CA2018-04-064 |
| E.T.H. | : | O P I N I O N<br>1/14/2019 |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JV2017-1753

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, OH 45011, for appellee

Caparella-Kraemer & Associates, LLC, Tyler W. Nagel, 4841-A Rialto Road, West Chester, OH 45069, for appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, E.T.H., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child. Appellant further appeals the juvenile court's dispositional decision ordering him to complete a sex offender treatment program.

{¶ 2} On September 11, 2017, 14-year-old K.S. (the "victim") was exiting her middle school. Behind her, 13-year-old appellant and his male friends, T.L. and L.W., also exited the school. All four students were in eighth grade. Once outside the building, the three boys surrounded the victim. Appellant stood in front of the victim, blocking her path. As the

victim started to walk away, T.L. stated, "Fuck her." The victim replied "no" and began running away. Appellant immediately chased after her. Upon hearing T.L. call her name, the victim stopped running and turned around. T.L. grabbed her and put her in a "tight" bear hug, facing her. Appellant started pulling at the victim's jacket and shirt. During that time, all three boys stated "rape her, rape her," and appellant was giggling. The victim was able to escape by kicking T.L. in the shin, shoving him, and running away. Appellant chased after her for several feet before he gave up. Later that day, with the encouragement of a friend, the victim told her parents about the incident. The police were notified.

{¶ 3} The victim talked to the police that evening and to school resource officer Matt Wagers of the Oxford Police Department the following day. A school security video showed most of the incident and depicted T.L. bear hugging the victim and appellant with his hands on her. The video does not have audio. Upon reviewing the video, Officer Wagers and the school principal questioned the three boys separately.

{¶ 4} On October 26, 2017, Officer Wagers filed a complaint against appellant alleging he was a delinquent child for having committed an act that would constitute abduction with a sexual motivation in violation of R.C. 2905.02(A)(2) and (B), a third-degree felony if committed by an adult. The matter proceeded to a joint adjudication hearing for all three boys. At the hearing, the juvenile court heard testimony from Officer Wagers, the school principal, T.L., and the victim. Appellant did not testify or present witnesses on his behalf.

{¶ 5} The victim testified that as appellant was pulling on her clothes while T.L. had her in a bear hug, she "freaked" and "kind of panicked." She further testified that the "fuck her" and "rape her" comments made her scared. This was due in part to prior incidents in seventh grade where appellant had tried to touch her breasts during lunch and had sent her links to pornographic websites. The victim testified that upon freeing herself, she ran away

until she reached her cousins. She did not tell them about the incident but instead "kind of joked around with them to calm my nerves."

{¶ 6} Officer Wagers testified that during questioning, T.L. and L.W. both admitted that all three boys stated "rape her" as the victim was held in a bear hug and appellant was touching her. Both T.L. and L.W. also confirmed that T.L. stated "Fuck her." By contrast, appellant was "pretty cloudy on the incident," and claimed he was just joking around and "just kind of poking her."

{¶ 7} T.L. testified that before they left the school building, appellant came up to him and told him to follow his lead. Upon exiting the building, as soon as appellant started chasing the victim, T.L. started running too. T.L. then stated, "Fuck her." T.L. testified he ran to the victim and put his arm around her shoulder "for exactly * * * three to five seconds." He however let go as soon as appellant started "to poke" at the victim's clothes because T.L. thought it went too far. T.L. claimed that during the incident, he only said "Fuck her," L.W. said either "rape her" or "rape," and appellant said nothing.

{¶ 8} On January 29, 2018, the juvenile court adjudicated appellant delinquent for committing abduction and ordered him to undergo a sex offender evaluation. The evaluation was performed by Dr. Bobbie Hopes, a clinical/forensic psychologist. On March 13, 2018, the juvenile court held a dispositional hearing. Dr. Hopes' report was admitted into evidence during the hearing. It recommended that appellant be required to complete sex offender treatment. By entry filed the same day, the juvenile court committed appellant to the legal custody of the Ohio Department of Youth Services for a minimum period of six months up to a maximum period not to exceed his 21st birthday. The court then suspended appellant's commitment, placed him in the custody of the Butler County Juvenile Rehabilitation Center, and ordered that he successfully complete a sex offender treatment program there.

{¶ 9} Appellant now appeals, raising two assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED IN ADJUDICATING E.H. A DELINQUENT CHILD UNDER R.C. 2905.02.

{¶ 12} Appellant argues that the state's evidence of restraint was insufficient to allow the juvenile court to adjudicate him delinquent for abduction and the decision was against the manifest weight of the evidence. Specifically, appellant asserts that the restraint on the victim's liberty was neither total nor substantial but was instead rather miniscule because the victim "was moving the whole time" and "never stopped" until she caught up to her cousins.

{¶ 13} The standards of review applied in determining whether a juvenile's delinquency adjudication is supported by sufficient evidence and whether it is against the manifest weight of the evidence are the same standards as applied in adult criminal cases. *In re Washington*, 81 Ohio St.3d 337, 339 (1998); *State v. C.J.*, 12th Dist. Warren No. CA2017-06-082, 2018-Ohio-1258, ¶ 35. The relevant inquiry in reviewing a claim of insufficient evidence is whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70.

{¶ 14} In considering whether a conviction is against the manifest weight of the evidence, "a reviewing court must examine the entire record, weigh all of the evidence and reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *C.J.* at ¶ 36. In reviewing a manifest weight challenge, an appellate court must

- 4 -

be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given the evidence. *In re I.L.J.F.*, 12th Dist. Butler No. CA2014-12-258, 2015-Ohio-2823, ¶ 27. Thus, an appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case when the evidence presented at trial weighs heavily against the conviction. *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 35.

{¶ 15} Because a finding that an adjudication of delinquency is supported by the manifest weight of the evidence also necessarily includes a finding that it is supported by sufficient evidence, the determination that the adjudication is supported by the manifest weight of the evidence will also be dispositive of an appellant's sufficiency claim. *In re I.L.J.F.* at ¶ 28.

{¶ 16} Appellant was adjudicated delinquent for committing abduction with a sexual motivation in violation of R.C. 2905.02(A)(2) and (B). Pursuant to R.C. 2905.02(A)(2), "[n]o person, without privilege to do so, shall by force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]" R.C. 2905.02(B) provides that "[n]o person, with a sexual motivation, shall violate [R.C. 2905.02(A)]."

{¶ 17} An essential element of abduction is the restraint of another's liberty. *State v. Swearingen*, 12th Dist. Clinton No. CA2001-01-005, 2001 Ohio App. LEXIS 3648, *4 (Aug. 20, 2001). Restraint of liberty has been construed to mean "to limit one's freedom of movement in any fashion for any period of time." *State v. Martin*, 10th Dist. Franklin Nos. 02AP-33 and 02AP-34, 2002-Ohio-4769, ¶ 32.

{¶ 18} Appellant argues that the restraint was neither a total restraint nor a substantial interference with the victim's freedom and was instead miniscule. Appellant's argument goes primarily to the brevity of the restraint on the victim's liberty. However, even

a momentary restraint may qualify as an abduction if it produces the required risk of physical harm to or fear in the victim. *Swearingen* at *6-7; *State v. Willis,* 12th Dist. Butler No. CA2002-02-028, 2002-Ohio-6303, ¶ 12. "'Proof of the restraint of another's liberty does not need to show that such restraint was of a particular duration * * * or was accomplished in a particular manner.'" (Citations omitted.) *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 45, quoting *Martin* at ¶ 32. Sufficient evidence establishes the element of restraint where there is a "real" or "material" interference with another's liberty, as contrasted with a "petty annoyance, or a slight inconvenience, or an imaginary conflict." *Swearingen* at *6.

{¶ 19} The record plainly shows that the victim's liberty was restrained. The school security video first shows appellant blocking the victim's path after she and the three boys had exited the building. Upon hearing T.L. state "Fuck her," the victim began running away. However, upon hearing T.L. call her name, she stopped and turned around. The victim testified that T.L. then put her in a tight bear hug and appellant started pulling down her jacket and shirt, all the while appellant and his friends chanted, "rape her, rape her." The victim testified she "freaked" and panicked and that she was scared.

{¶ 20} Appellant cites *Swearingen*, *Willis*, and *State v. Combs*, 2d Dist. Greene No. 98CA137, 2000 Ohio App. LEXIS 200 (Jan. 28, 2000), in support of his argument that there was insufficient restraint in this case to support an adjudication of delinquency for abduction. However, the fact that *Swearingen* and *Willis* involved more severe conduct which satisfied the element of restraint does not mean that a case involving less severe conduct does not. Certainly, *Swearingen* and *Willis* do not stand for the proposition that any restraint less than that involved in those cases fails to satisfy the restraint element of abduction. As for *Combs*, it involved no restraint of liberty at all and is therefore not applicable.

{¶ 21} The state presented evidence that appellant, acting in concert with T.L.,

restrained the victim, placing her in fear. The fact that the restraint was brief and that the victim "never stopped moving" during the incident is immaterial, as even a momentary restraint may constitute abduction. *Swearingen*, 2001 Ohio App. LEXIS 3648 at *8. We find there was ample evidence supporting the juvenile court's determination that appellant is a delinquent child for committing abduction. In so finding, we are mindful that the juvenile court was in the best position to judge the credibility of the witnesses and the weight to be given the evidence.

{¶ 22} We therefore find that appellant's adjudication was not against the manifest weight of the evidence. This finding is also dispositive of appellant's sufficiency claim. Appellant's first assignment of error is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT ERRED IN COMMITTING E.H. TO A JUVENILE REHABILITATION CENTER.

{¶ 25} Appellant argues the juvenile court abused its discretion in ordering him to complete a sex offender treatment program. Appellant asserts that the juvenile court's dispositional order is not commensurate with the seriousness of the conduct for which he was adjudicated delinquent.

{¶ 26} A juvenile court's disposition for a child adjudicated delinquent is a matter within the juvenile court's discretion and will not be disturbed on appeal absent an abuse of discretion. *State v. K.W.*, 12th Dist. Warren No. CA2016-01-004, 2016-Ohio-7365, ¶ 33.

{¶ 27} Pursuant to R.C. 2152.01(A), the overriding purpose of a juvenile disposition is to "provide for the care, protection, and mental and physical development of children * * *, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender," which shall be achieved by "a system of graduated sanctions and services." R.C. 2152.01(B) further provides that a

juvenile disposition shall be "reasonably calculated" to achieve these purposes, "commensurate with and not demeaning to the seriousness of the delinquent child's * * * conduct and its impact on the victim, and [be] consistent with dispositions for similar acts committed by similar delinquent children[.]"

{¶ 28} R.C. 2152.19(A)(2) authorizes a juvenile court to "[c]ommit the child to the temporary custody of any school, camp, institution or other facility operated for the care of delinquent children by the county[.]" R.C. 2152.19(A)(8) further authorizes the juvenile court to impose "any further disposition that the court finds proper[.]"

{¶ 29} "Because the juvenile court 'has the opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved,' [R.C. 2152.01] authorizes it to issue orders of disposition appropriate to each child." *In re B.K.*, 2d Dist. Greene No. 2017-CA-32, 2018-Ohio-864, ¶ 10, quoting *In re Caldwell*, 76 Ohio St.3d 156, 160-161 (1996). Therefore, "the juvenile court considers not only the delinquent act, but 'the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile and other societal factors[.]'" *Id.*

{¶ 30} During the March 13, 2018 dispositional hearing, the victim's father informed the juvenile court that beginning in sixth grade, appellant would follow the victim and touch her inappropriately. Once the victim's father alerted the school principal and vice principal, appellant's inappropriate behavior stopped. However, given the recent incident, the victim's father expressed his concern that appellant's behavior was escalating.

{¶ 31} Officer Wagers informed the juvenile court that appellant was suspended from school following the incident, and that he went back to school on February 8, 2018. Subsequently, however, a 9-1-1 call to the sheriff's office led to the seizure of appellant's personal laptop and the discovery that following his return to school appellant had accessed

several chat rooms during the school day. The officer described the chat rooms as "containing pornographic material" and "deviant pornographic material as well." The officer stated appellant was an active participant in the chat rooms. When asked by the juvenile court to explain his behavior, appellant stated that he rarely looks at pornography, he was not "really looking at the pictures" posted by other participants, and he "was just talking in the chat room."

{¶ 32} In her report, Dr. Hopes recommended that appellant be required to complete a sex offender treatment program. Dr. Hopes opined that given appellant's failure to accept responsibility for his actions, his significant minimization and denial of certain aspects of his role in the incident, his lack of remorse for the offense, his minimization of the effect the incident had on the victim, including his assertion that the victim did not consider it a sex offense, his frequenting pornographic websites, and his having few friends, appellant's risk of recidivism was higher than that of most adolescent sex offenders.

{¶ 33} Before imposing its dispositional order, the juvenile court expressed concerns regarding appellant's frequentation of pornographic websites, his escalating behavior regarding the victim, his need to learn how to behave in society, and the fact that the line between appropriate and inappropriate/illegal behavior was "kind of blurry" for appellant. Consequently, the juvenile court told appellant:

> I really think rehab would be good for you[.] I'm not trying to do
> it to punish. I think you need help and I'm real concerned and,
> about these chat rooms you're going in. There is some sick stuff
> out there. I'm just going to tell you, and a lot of kids get ideas
> from reading and looking at that stuff that they may never have
> before. Do you understand? And so you've got to learn where
> that line is, and I truly think rehab would help you.
>
> * *
>
> I have a lot of kids go through rehab and it really helped them.
> I don't want you getting in trouble for this kind of stuff anymore.

{¶ 34} Given the foregoing, we find that the juvenile court did not abuse its discretion in ordering appellant to complete a sex offender treatment program. The court deemed it in the interest of public safety and necessary for appellant's rehabilitation to require him to complete such program. The juvenile court had the opportunity to see and hear appellant, assess the consequences of appellant's delinquent behavior, and evaluate all the circumstances involved. *See In re Caldwell*, 76 Ohio St.3d at 160-161. R.C. 2152.19(A) authorizes the court to issue dispositional orders appropriate to each child. The juvenile court's order is consistent with the underlying purposes and goals of the juvenile court system, that is, supervision, care, and rehabilitation of appellant as a delinquent child.

{¶ 35} Appellant's second assignment of error is accordingly overruled.

{¶ 36} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.