[Cite as *State v. Schils*, 2020-Ohio-2883.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-08-067 |
| | : | O P I N I O N |
| - vs - | | 5/11/2020 |
| | : | |
| JAMES A. SCHILS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2019CRB2278

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for appellant

**RINGLAND, J.**

{¶ 1} Appellant, James A. Schils, appeals his convictions for criminal trespass and disorderly conduct in the Clermont County Municipal Court.

{¶ 2} In May 2019, appellant was charged by criminal complaint with two offenses: one count of criminal trespass, a fourth-degree misdemeanor in violation of R.C. 2911.21(A)(1); and one count of disorderly conduct, a minor misdemeanor in violation of

R.C. 2917.11(A)(3). These charges stemmed from appellant's uninvited visit to see his children at the home of his ex-wife and her fiancé (the "victim"), during which appellant entered the victim's property and engaged in belligerent behavior. Appellant pled not guilty and waived his right to counsel. The matter proceeded to a bench trial before a magistrate. At trial, the prosecution called one witness, the victim, and had admitted into evidence a video recording the victim took of the incident. For his defense, appellant testified on his own behalf and called his girlfriend, who was with him at the time, and the charging police officer to testify.

{¶ 3} At the conclusion of the trial, the magistrate found appellant guilty as charged. For the criminal trespass conviction, the trial court sentenced appellant to 15 days in jail, but suspended the jail term subject to community service, a fine, and unsupervised community control with an order to stay away from the victim's residence. For the disorderly conduct conviction, the trial court sentenced appellant to an additional fine.

{¶ 4} Appellant now appeals raising two assignments of error for review. For ease of analysis, we will discuss the assigned errors together.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT COMMITTED PLAIN ERROR IN ENTERING VERDICTS OF GUILTY AS THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO SUSTAIN CONVICTIONS FOR CRIMINAL TRESPASS OR DISORDERLY CONDUCT AS CHARGED IN THE COMPLAINTS.

{¶ 7} Assignment of Error No. 2:

{¶ 8} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} In his first and second assignments of error, appellant argues that there was

insufficient evidence to convict him and that the guilty findings were against the manifest weight of the evidence. Specifically, for the criminal trespass offense, appellant contends that he had permission to enter the property and that he did not unreasonably remain on the property after he understood his privilege to have been revoked. Appellant does not dispute that he knowingly entered the property. Next, for the disorderly conduct offense, appellant argues that he did not utter "fighting words" or otherwise engage in conduct likely to provoke a violent response.

{¶ 10} Initially we note that appellant failed to object to the magistrate's decision, therefore pursuant to Crim. R. 19(D)(3)(b)(iv), this court will review only for plain error. *See State v. Shie*, 12th Dist. Butler No. CA2007-02-038, 2008-Ohio-350, ¶ 43-45. Notice of plain error must be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12, citing *State v. Long*, 53 Ohio St.2d 91, 95 (1978). To constitute plain error, there must be an obvious deviation from a legal rule that affected the defendant's substantial rights, that is, the error must have affected the outcome of the proceeding. *State v. Carpenter*, 12th Dist. Butler No. CA2019-03-044, 2019-Ohio-4829, ¶ 35.

{¶ 11} Whether the evidence is sufficient to sustain a conviction is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). A sufficiency of the evidence challenge requires the appellate court to review the evidence admitted at trial to determine whether that evidence, if believed, would support a conviction. *State v. Carroll*, 12th Dist. Clermont Nos. CA2007-02-030 and CA2007-03-041, 2007-Ohio-7075, ¶ 117. The standard of review is whether any reasonable trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Cobb*, 12th Dist. Butler No. CA2007-

06-153, 2008-Ohio-5210, ¶ 93, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} On the other hand, a manifest weight of the evidence challenge requires the appellate court to examine the inclination of the greater amount of credible evidence offered at trial to support one side over the other. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 42. While the manifest weight of the evidence challenge requires the reviewing court to consider credibility of the evidence, an appellate court must be mindful that the trier of fact has the primary role of weighing the evidence and determining witness credibility. *State v. Salinger*, 12th Dist. Butler No. CA2014-10-208, 2015-Ohio-2821, ¶ 15, citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). An appellate court will overturn a conviction on manifest weight of the evidence grounds only in extraordinary circumstances, when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Helton*, 12th Dist. Warren No. CA2018-12-141, 2019-Ohio-4399, ¶ 17. The determination that a conviction is supported by the manifest weight of the evidence will be dispositive of the sufficiency of the evidence challenge. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 13} To convict on criminal trespass, the prosecution had to prove that appellant, without privilege to do so, knowingly entered or remained on the land or premises of another. R.C. 2911.21(A)(1). Privilege is the distinguishing characteristic between an

individual's lawful or unlawful presence on another's land or premises. *State v. Bradford*, 12th Dist. Warren No. CA2010-04-032, 2010-Ohio-6429, ¶ 27. Therefore, the lack of privilege is an essential element of the offense that the prosecutor had to prove. *State v. Hubbard*, 12th Dist. Butler No. CA99-02-040, 1999 Ohio App. LEXIS 4811, *5 (Oct. 11, 1999); *See also State v. Hohman*, 14 Ohio App.3d 142, 164 (12th Dist.1983). Privilege is defined as an "immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶ 14} Here, the victim testified that appellant drove by his house several times before bringing the vehicle to a stop in front of the residence. Appellant spoke to the victim from his vehicle asking if he could visit his daughters. The victim made some statements about it not being the appropriately scheduled date and for appellant to "move on." He additionally testified that he did not give appellant permission to enter his property and that his statements to appellant were better characterized as taunts, although when asked by the prosecutor if a privilege had been granted, he responded affirmatively. After making those statements, appellant got out of his vehicle and moved quickly into the victim's yard. Shortly after appellant entered the property, the victim testified that he explicitly told appellant to leave. The victim testified that it seemed to take around 45 seconds for appellant to depart. The victim also testified that he felt threatened during the interaction, especially because appellant told him "it's coming," before appellant finally relented and exited from the property.

{¶ 15} In addition to the victim's testimony, the prosecutor presented into evidence a video recording of the incident. The victim testified that he used the video camera feature on his cellular telephone to record the interaction before appellant got out of his vehicle. The video depicts the two men yelling at each other across the victim's yard. The victim

initially yells something to the effect of it is not your day and move on, but then says, "step into my yard" and "do it" before appellant charges into the yard. In the background appellant's ex-wife can be heard yelling at appellant to leave. Appellant moves into the yard with his chest puffed out and his arms moving or flailing in an excited fashion. After entering the yard, appellant exclaims, "do you want me to step into your yard, bitch?" The victim moves up to intercept appellant, then tells appellant to leave with profanity-laden language. Appellant halfway turns to leave but continues to squabble with the victim. Both men go back and forth exclaiming "do it," "you do it." During this exchange appellant engages in short lunges with his upper body toward the victim and ultimately lifts his sunglasses to his forehead to stare at the victim and exclaim "it's coming" with more profanity before leaving the property. Based on the video timestamp, the whole incident lasted around 20 seconds from the time appellant enters the yard to when he leaves the property.

{¶ 16} For his defense, appellant called his girlfriend to testify. She testified that she lives near the victim's home, so it was not abnormal for appellant to drive past the victim's house. She testified that appellant saw his children out for a walk in the neighborhood, so appellant decided to turn around in an attempt to talk to them. She acknowledged that appellant hesitated as to whether to stop, but after driving by the house several times, she suggested to appellant that he should stop to explain to the victim and his ex-wife that he wanted to speak with his children. Regarding the incident, the girlfriend testified that she did not believe appellant's conduct was provocative. While she did not believe that appellant's conduct was provocative, she acknowledged that appellant lingered in the victim's yard to get in the "last word."

{¶ 17} Finally, appellant testified that the victim's statements were an "invitation" to enter the yard, but he did not feel welcome. He also characterized his demeanor as "friendly" and explained that his statement of "it's coming" merely referenced a more

favorable custody/visitation resolution for him, from the court, that he expected to come in the future.

{¶ 18} In finding appellant guilty, the magistrate found that the victim's statements did not amount to a grant of privilege to enter the property because it was conveyed as a taunt or a dare, and alternatively that appellant failed to leave after expressly being told to leave. After review of the record, we agree. The trier of fact may take note of any inconsistencies in the witness' testimony and resolve them accordingly, believing all, part, or none of each witness's testimony. *See State v. Lark*, 12th Dist. Fayette No. CA2018-03-004, 2018-Ohio-4940, ¶ 29. The victim testified to facts as similarly demonstrated by the video recording. The video evidence demonstrated that the victim and appellant were engaged in a shouting match when appellant charged into the front yard. Appellant's statement of "do you want me to step into your yard, bitch" as he entered the property, coupled with his admission at trial that he did not feel welcome is sufficient evidence for any reasonable trier of fact to conclude that appellant understood that no express privilege to enter was granted to appellant. Moreover, there was evidence that appellant did not have an "open invitation" to visit the victim's residence, nor was the victim's residence the normal location for appellant to pick-up his children for scheduled visitation, therefore appellant did not have an implied privilege to enter. Finally, appellant's bickering and posturing to get the "last word" in after being explicitly told to leave further established that appellant violated the statute by knowingly *remaining* on the property. Appellant's argument that he did not "remain" on the premises and his reference to other state case law is unpersuasive in light of the evidence at bar that appellant unnecessarily lingered for several moments and did not quietly leave the victim's property, even assuming arguendo that he had the privilege to enter. Consequently, the trial court did not lose its way finding appellant guilty of criminal trespass. Appellant's conviction was not against the manifest weight of the evidence.

{¶ 19} Next, to convict appellant on disorderly conduct the prosecution had to prove that appellant recklessly caused inconvenience, annoyance, or alarm to another by insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response. R.C. 2917.11(A)(3). Other Ohio courts have interpreted R.C. 2917.11(A)(3) as prohibiting both the offender's use of "fighting words" and/or conduct likely to "provoke a violent response." *State v. Miller*, 6th Dist. Lucas No. L-86-281, 1987 Ohio App. LEXIS 5942, *4 (Feb. 27, 1987). Fighting words are "those words that are likely by their very utterance to inflict injury or to incite an immediate breach of the peace." *City of Middletown v. Carpenter*, 12th Dist. Butler No. CA2006-01-004, 2006-Ohio-3625, ¶ 14. When determining whether the language used by the offender constitutes fighting words, the circumstances surrounding the words must be examined. *Id*.; *accord Warren v. Patrone*, 75 Ohio App.3d 595, 598 (11th Dist.1991). One of the factors for determining if language constitutes "fighting words" is whether the language is directed at a specific person or is more general statement—a targeted statement more usually constitutes "fighting words." *See Carpenter,* 2006-Ohio-3625 at ¶ 15. The standard is whether a reasonable person would be provoked to violence, not that an individual was actually provoked to violence. *See State v. Blair*, 2d Dist. Montgomery No. 24784, 2012-Ohio-1847, ¶ 9; *See also State v. Johnson*, 6 Ohio App.3d 56, 57 (12th Dist.1982).

{¶ 20} Here, the evidence at trial established that appellant quickly walked up to the victim's property with his chest puffed out and his arms moving in an excited fashion. As discussed above, appellant immediately and specifically addressed the victim with profanity-laden language. The two men came within arm's reach of each other when the victim told appellant to leave the property. At that point, with appellant partially turned to leave, the two men continued to utter oral jeers to each other, in what can only be described as challenges for the other to throw the first punch. In addition to his oral challenges,

appellant made repeated short lunging motions with his upper body in a physically aggressive manner. Finally, appellant dramatically exclaimed "it's coming" to the victim. The victim testified that this exchange alarmed him. Objectively examining appellant's words, both vulgar and not, in conjunction with his aggressive actions, under the circumstances, we find appellant engaged in conduct likely to provoke a violent response. The trial court did not lose its way in finding appellant guilty and the conviction was not against the manifest weight of the evidence.

{¶ 21} Accordingly, appellant's first and second assignments of error are overruled.

{¶ 22} Judgement affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.