[Cite as *State v. Davis*, 2026-Ohio-1096.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2025-03-025 |
| Appellee, | : | |
| | : | OPINION AND JUDGMENT ENTRY 3/30/2026 |
| vs. | : | |
| BRANDON LEE DAVIS, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2024-09-1355

Michael T. Gmoser, Butler County Prosecuting Attorney, and John Heinkel, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher Pagan, for appellant.

## **O P I N I O N**

**PIPER, J.**

{¶ 1} Appellant, Brandon Davis, appeals his conviction and sentence in the Butler County Court of Common Pleas following a jury trial. For the reasons set forth below, we

affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. Factual and Procedural Background

{¶ 2} Asiah Slone drifted between the residences of different friends until one night in June 2024, when she stayed at the home of her friend, Anna Palmer, along with other occupants, Tamara Tucker, Perry Hart, and Brian Davis (appellant's brother). While Slone was asleep on the living room floor, appellant and Michael Davis (appellant's other brother) knocked on the front door and Palmer greeted the two of them. Appellant then entered, Michael left, and Palmer went back to sleep. A few minutes later, the occupants of the house were stirred by the sound of a gunshot. Palmer then found appellant sitting on a table, looking over Slone's body on the floor.

{¶ 3} Appellant then ordered Hart, Palmer, and Brian Davis at gunpoint into the same room and asked if they were with him or against him. While threatening Hart with a second gun, appellant ordered Hart to take the murder weapon, take Slone into the basement, and shoot Slone a second time to "shut her up" or else appellant would "shut everybody up." Hart complied, and after Hart shot Slone the second time, everyone fled the house.

{¶ 4} Appellant later collected Slone's remains, disposed of them in a trash bin, and then moved the bin several times in an attempt to hide it. On July 1, 2024, the trash bin was discovered with Slone's decomposing remains inside. The coroner's office later determined she had sustained two gunshot wounds to the head, of which either would have been fatal.

{¶ 5} On July 11, 2024, Hart was brought into the Middletown Police Station for questioning about Slone's death. Hart then provided the police with the gun used to shoot Slone, which had blue camouflage coloring. Hart ultimately admitted to shooting Slone

and entered into a plea deal with the prosecutor whereby he agreed to testify against appellant in exchange for a lesser charge of manslaughter and kidnapping with a sentence of 20 years in prison. Forensic analysis later confirmed that the firearm was operable and that Slone's DNA was found on the basement stairs, the basement wall, and carpet padding in the residence. DNA from the firearm identified Hart as the major contributor.

{¶ 6}   On August 5, 2024, Detective Ken Mynhier of the Middletown Police Department interviewed appellant regarding an unrelated matter. Without prompting, appellant asked if Perry Hart had been arrested with a gun and if that gun was "colorful." Appellant claimed that Hart was trying to sell him a gun and described it as "colorful with no clip." Detective Mynhier explained that he knew Hart had been arrested with a gun, but that he had not seen what color it was. The interview continued, and then appellant asked if Hart had admitted to being involved in the death of Asiah Slone and suggested the gun might be the murder weapon.

{¶ 7}   On September 12, 2024, appellant was indicted on six felony counts arising from the shooting of Slone: (1) aggravated murder; (2) aggravated murder; (3) kidnapping; (4) murder; (5) attempted murder; and (6) having weapons under disability. All counts except the weapons under disability count included firearm specifications and specifications that appellant was a repeat violent offender (RVO). On October 18, 2024, the State filed and served notice of its intention to use a certified copy of appellant's prior conviction for felonious assault in 1998 when he was 17 years old. No objection was made by the defense.

{¶ 8}   While appellant was in jail, he detailed his actions in Slone's murder to fellow jail inmates Antonio Gray and Richard Crosby. Gray and Crosby later agreed to testify as

witnesses for the State without anything in exchange for their testimony.

{¶ 9} Appellant's case proceeded to a jury trial on February 3, 2025. The State presented testimony from Palmer, Hart, Tucker, Gray, and Crosby, as well as from several forensics experts, detectives, and police. The defense called Detectives Jason Flick and Luke Agee as witnesses and appellant testified on his own behalf.

{¶ 10} On February 7, 2025, the jury returned guilty verdicts on all counts and firearm specifications. A sentencing hearing was held on March 11, 2025, and the State presented the certified copy of appellant's prior conviction and the trial court found appellant guilty of the RVO specifications. The trial court then sentenced appellant to prison terms of 30 years to life on Count One, aggravated murder, with an additional 54 months for the firearm specification, and 10 years for the RVO specification. Counts Two through Five were merged, and appellant was also sentenced to a concurrent term of 36 months in prison for Count Six, having weapons under disability, for an aggregate sentence of 44.5 years to life.

{¶ 11} Appellant filed a notice of appeal on March 13, 2025. On appeal, appellant raises three assignments of error for our review.

## II. Legal Analysis

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE STATE VIOLATED DUE PROCESS BY FAILING TO CORRECT THE FALSE TESTIMONY OF A JAILHOUSE INFORMANT REGARDING THE INFORMANT'S REQUEST FOR FAVORABLE TREATMENT IN EXCHANGE FOR HIS TESTIMONY.

{¶ 14} In his first assignment of error, appellant argues his right to due process was violated because the State did not correct inmate Gray's testimony when, during

cross-examination by the defense, he denied asking for favorable treatment in exchange for his testimony. Specifically, defense counsel asked Gray, "But you have requested something, haven't you?" and Gray answered "No, I have not." In fact, when interviewing with the prosecutor's office prior to trial, Gray had asked to have his probation terminated, but he was told in no uncertain terms that would not happen and ultimately received no benefit for providing his testimony. Although the State did not correct Gray during its case-in-chief, it had disclosed Gray's request to the defense prior to trial. Therefore, the defense later called Detective Flick as a witness, who was present for Gray's interview, and he testified to this discrepancy in Gray's testimony.

{¶ 15} The State followed up on cross-examination of Detective Flick, and asked him to explain what took place in the interview. Detective Flick testified that Gray "informed us that he was on probation in Butler County and asked if we would be able to get his probation terminated. And he was told that that would not be able to happen" and "he very clearly understood that that was not going to be a condition" for his testimony. The State asked specifically, "Did [Gray] ask that it would be a condition for him to testify?" and Flick answered, "He did not."

{¶ 16} The Supreme Court has held that the state violates due process by failing to correct testimony that it knows to be false. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish a *Napue* violation, a defendant must show that (1) the statement was actually false, (2) the statement was material, and (3) the prosecution knew it was false. *State v. Widmer*, 2013-Ohio-62, ¶ 38 (12th Dist.). A false statement is material under this standard and a new trial is warranted, "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *State v. Stepp*, 2020-Ohio-6901, ¶ 26 (12th Dist.); *Glossip v. Oklahoma*, 604 U.S. 226, 285-286 (2025).

{¶ 17} In essence, appellant argues that the State had a strict duty to correct Gray immediately, regardless of whether the defense later demonstrated the factual error. However, as the Ohio Supreme Court has explained, "no hard and fast rule can be set forth defining when the prosecutor has a duty to disclose evidence," but "if the testimony of a prosecution witness is perjured and the prosecutor knows, or has good reason to believe, that the testimony is false, he must either disclose the falsity of the testimony *or make available to the defense the means to do so*." (Emphasis added.) *McMullen v. Maxwell*, 3 Ohio St.2d 160, 167 (1965). By disclosing Gray's request to the defense prior to trial, the State provided the defense with the means to disclose the falsity of his testimony. Because the defense presented Detective Flick's testimony and (along with the State's cross-examination) established that Gray had omitted his brief and futile request to have his probation terminated, the jury was able to weigh Gray's credibility accordingly, and there is no reasonable likelihood that Gray's false testimony could have affected the judgment of the jury.

{¶ 18} Appellant's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED BY CONVICTING APPELLANT OF THE RVO SPECIFICATION AND IMPOSED AN UNLAWFUL RVO SENTENCE.

{¶ 21} In his second assignment of error, appellant raises two issues with his RVO specification and sentence, arguing (1) there was insufficient evidence of his prior conviction; and (2) the trial court engaged in improper judicial fact-finding when it imposed his RVO sentence.[1]

---

1. For ease of discussion, we address these in reverse order from how they are presented in appellant's brief.

Evidence of Appellant's Felonious Assault Conviction

{¶ 22} First, appellant argues there was insufficient evidence to show that the juvenile court relinquished jurisdiction to the adult court for the 1998 conviction that served as the basis for his RVO sentence enhancement. In support, appellant cites a prior decision from this court upholding the imposition of an RVO sentence after finding, among other things, "that the [S]tate presented sufficient evidence . . . the Kentucky juvenile court relinquished its jurisdiction" over the appellant's case and that he was tried and convicted as an adult. *State v. Sargent*, 126 Ohio App.3d 557, 564 (12th Dist. 1998). Appellant asserts his RVO sentence enhancement is improper because the State did not present evidence "on identity or relinquishment."

{¶ 23} However, *Sargent* was premised on a prior version of the relevant statutes. Nothing in the current versions of the relevant statutes leads us to conclude that there are any special requirements, including a juvenile court "relinquishing" its jurisdiction of a juvenile defendant to an adult court, for a conviction to serve as the basis of determining whether a defendant is an RVO. *State v. Madden*, 2025-Ohio-4891, ¶ 26 (12th Dist.). Rather, R.C. 2941.149(C) provides

> [a]t the arraignment of the defendant or as soon thereafter as is practicable, the prosecuting attorney may give notice to the defendant of the prosecuting attorney's intention to use a certified copy of the entry of judgment of a prior conviction as proof of that prior conviction. The defendant must then give notice to the prosecuting attorney of the defendant's intention to object to the use of the entry of judgment. If the defendant pursuant to Criminal Rule 12 does not give notice of that intention to the prosecuting attorney before trial, the defendant waives the objection to the use of an entry of judgment as proof of the defendant's prior conviction, as shown on the entry of judgment.

{¶ 24} Here, the State filed notice of its intention to use a certified copy of appellant's prior conviction of felonious assault on October 18, 2024. However,

appellant did not object prior to trial to the use of the certified entry, admitted the conviction during his trial testimony, and declined to object to the entry when it was offered during the sentencing hearing. The entry reflects a criminal conviction for felonious assault and the statute is clear—by failing to give notice appellant has waived any objection to the State's use of the certified entry as proof of his prior conviction. Appellant's first issue is not well-taken.

Improper Judicial Fact-Finding

{¶ 25} Second, appellant argues that the trial court engaged in improper fact-finding when it imposed the RVO sentence because it made explicit findings pursuant to R.C. 2929.14(B)(2)(a)(iv) and (v). Pursuant to that statute, a trial court may impose upon an offender "an additional definite prison term" of one to ten years, in one-year increments, if five criteria are met:

> (1) the defendant is convicted of an RVO specification;
>
> (2) the defendant is currently convicted of aggravated murder (among other eligible types of convictions);
>
> (3) the court imposed the maximum prison term (but not life imprisonment without parole) or longest minimum term for the offense;
>
> (4) the court finds that the prison terms imposed are "inadequate to punish the offender and protect the public from future crime because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism." [the "Inadequacy Findings"];
>
> (5) the court finds that the prison terms imposed are "demeaning to the seriousness of the offense," after considering the same statutory factors considering and weighing the seriousness factors of R.C. 2929.12. [the "Demeaning Findings"].

*State v. Maloney*, 2024-Ohio-3143, ¶ 12 (12th Dist.); *Madden*, 2025-Ohio-4891, at ¶ 14

(12th Dist.); *See* R.C. 2929.14(B)(2)(a)(i)-(v). When imposing a sentence under R.C. 2929.14(B)(2)(a), the trial court "shall state its findings explaining the imposed sentence." R.C. 2929.14(B)(2)(e). "Similar to the conclusion that 'talismanic' words are not required by the trial court when imposing consecutive sentences under R.C. 2929.14(C)(4), there are no magic words that must be recited by the trial court when making the RVO findings under R.C. 2929.14(B)(2)(a)." *Maloney* at ¶ 15, quoting *State v. Watts*, 2017-Ohio-532, ¶ 11 (8th Dist.). "As long as the reviewing court can discern from the record that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, the sentence on the RVO specifications should be upheld." *Id.*; *See also State v. Shaffer*, 2022-Ohio-2006, ¶ 24 (5th Dist.).

{¶ 26} To complicate matters, the case law regarding the constitutionality of judicial fact-finding in imposing RVO sentences has evolved. In 2006, the Ohio Supreme Court held that the Inadequacy and Demeaning Findings involve unconstitutional judicial fact-finding in violation of an offender's Sixth Amendment right to a jury trial. *State v. Foster*, 2006-Ohio-856, ¶ 99. The Supreme Court therefore ordered these provisions be severed from the statute and that "[a]fter the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications." *Id*. Then in 2009, the Supreme Court of the United States abrogated *Foster*, in part, by holding the Sixth Amendment does not inhibit States from requiring judges, rather than juries, to make certain factual findings before imposing consecutive sentences for multiple offenses. *Oregon v. Ice*, 555 U.S. 160, 171 (2009).

{¶ 27} Subsequently, the Ohio Supreme Court reexamined RVO sentencing and held, "when designating an offender as a repeat violent offender . . . a trial court does not violate the Sixth Amendment by considering relevant information about the offender's

prior conviction that is part of the judicial record," but did not disturb its decision in *Foster* to excise the portions of the statute mandating Inadequacy and Demeaning Findings. *State v. Hunter*, 2009-Ohio-4147, ¶ 38; *See also State v. Hodge*, 2010-Ohio-6320, (holding the decision in *Oregon v. Ice* does not automatically revive statutory provisions which were held unconstitutional in *Foster*). Since *Foster*, the General Assembly has enacted several bills to modify certain aspects of R.C. 2929.14 that carry forward the same language of the Inadequacy and Demeaning Findings that have been found unconstitutional, but has not expressed an intent to "reenact" those provisions. *State v. Oller*, 2017-Ohio-7575, ¶ 7-8 (10th Dist.), citing *Hodge* at ¶ 27, fn. 7. Accordingly, the Inadequacy and Demeaning Findings have never been revived by the legislature nor by the Supreme Court. *Id.*; *see also* R.C. 1.54 ("A statute which is reenacted or amended is intended to be a continuation of the prior statute and not a new enactment, so far as it is the same as the prior statute.").

{¶ 28} Post-*Foster*, Inadequacy and Demeaning Findings have not been determined to be constitutional, remain severed from the statute, and thus are not part of the correct analysis to impose an RVO sentence. *See Foster*, at paragraph six of the syllabus. Where a sentencing court has engaged in improper judicial fact-finding, the remedy is to remand for resentencing "in light of [the Ohio Supreme Court's] severance and interpretation of Ohio's felony-sentencing statutes." *Id.* at ¶ 107.

{¶ 29} Since *Ice* and *Hunter*, the Sixth and Tenth Districts have recognized that the effect of *Foster* has been "significantly diluted," and have suggested that "[t]aken together, these decisions suggest that it is constitutionally permissible for a trial judge, rather than a jury, to consider an offender's offense, his or her prior record, and the factual circumstances necessary for sentencing consecutively which may support inferences

concerning the seriousness of the offender's conduct and the danger the offender poses to the public." *See Oller* at ¶ 9; *State v. Fenderson*, 2023-Ohio-2903, ¶ 49 (6th Dist.). These courts further speculated, "if the Ohio General Assembly were to specify an intent to do so, R.C. 2929.14(B)(2)(a)(iv) and (v) could be purposefully reenacted without compelling a sentencing court 'to step beyond the permissible historical role of the sentencing court as recognized in *Ice* and *Hunter*.'" *Id*. Nevertheless, those cases addressed the sentencing court's omission of Inadequacy and Demeaning Findings, and in accord with *Foster*, held they were unnecessary.

{¶ 30} The case at bar presents the opposite situation—the trial court explicitly made Inadequacy and Demeaning Findings to impose the discretionary RVO sentence, tracking the excised language of R.C. 2929.14(B)(2)(iv) and (v), even though such findings were held unconstitutional. While a reexamination of Ohio's RVO sentencing statute might be appropriate in light of the cases decided since *Ice* and *Hunter*, such a reexamination can only be performed by the Ohio Supreme Court. *See State v. Lewis*, 2009-Ohio-4684, ¶ 10 (12th Dist.). Unless or until *Foster* is completely reversed or superseded by statute, we are required to follow the law and decisions of the Ohio Supreme Court. *Id.* On the record before us, we cannot discern if the RVO sentence reflects the correct analysis. Pursuant to *Foster*, judicial findings pursuant to R.C. 2929.14(B)(2)(iv) and (v) are unconstitutional, and therefore affect a defendant's substantial rights. Crim.R. 52. Hence, the remedy is resentencing without making these

- 11 -

findings. *Foster* at ¶ 107.[2]

{¶ 31} Appellant's second assignment of error is sustained.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE JURY'S GUILTY VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 34} In his third assignment of error, appellant argues his convictions were against the manifest weight of the evidence because

1. Appellant did not confess;

2. Appellant's DNA was not found on the gun or the trash bin that Slone's body was discovered in, but Hart's DNA was found on the gun;

3. None of the forensic evidence implicated appellant in Slone's murder;

4. Tucker, who was present at the Yankee Road residence could not say that appellant killed Slone;

5. Hart was a compromised witness because he was an accomplice with an incentive to shift blame to appellant;

6. Palmer was a compromised witness because she had a criminal record, suffered from a mental health disorder, and was a drug abuser;

---

2. {¶a} We note that in *State v. Madden*, 2025-Ohio-4891, this court was presented with similar arguments, but under different circumstances. In *Madden*, we concluded that the sentencing court did not make any impermissible findings when it imposed an RVO sentence. In that case, the sentencing court stated it "impose[d] the maximum of ten years because this offense was quite frankly so gruesome . . . [and Madden] is a danger to the public." We reasoned this statement reflected the trial court's consideration of "Madden's risk of recidivism and the seriousness of his crime to explain why it imposed the *maximum* RVO sentence, not to justify why it decided to impose an RVO sentence enhancement in the first place." (Emphasis in original.) *Id.* at ¶ 23.

{¶b} Unlike *Madden*, this case involves the trial court's improper fact-finding to impose an RVO sentence "in the first place." *See Id.* Here, the trial court clearly made Inadequacy and Demeaning findings on the record to impose an RVO sentence and separate findings to justify the length of appellant's RVO sentence. Thus, we do not disturb our previous holding in *Madden* that "a trial court does not violate the Sixth Amendment by considering relevant information about the offender's prior conviction that is part of the judicial record" when it utilizes its "authority to exercise discretion when deciding *how long* the sentence enhancement will be." (Emphasis added.) *Id.* at ¶ 22-23.

7.  Palmer and Hart provided conflicting details about the night of the murder;

8.  Gray was a compromised witness because he lied about asking for the termination of his probation; and

9.  Crosby was a compromised witness because he was a disbarred attorney awaiting proceedings in a federal criminal case and his cooperation could be a mitigating factor in his own future sentencing.

In sum, appellant argues that without a confession or forensic evidence specifically tying him to Slone's shooting, his convictions were entirely dependent on conflicting testimony from witnesses who are not credible for various reasons. We find appellant's arguments unpersuasive and that his convictions were supported by the manifest weight of the evidence.

{¶ 35} "'[A] manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion.'" *State v. Casey*, 2024-Ohio-689, ¶ 10 (12th Dist.), quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 26.

> "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*State v. Lewis*, 2020-Ohio-3762, ¶ 18 (12th Dist.), citing *State v. Wilks*, 2018-Ohio-1562, ¶ 168. This court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 10 (12th Dist.). "This may occur only when there is unanimous disagreement with the jury's verdict." *State v. Palma*, 2025-Ohio-1318, ¶ 9 (12th Dist.).

- 13 -

{¶ 36} "[A] lack of physical or forensic evidence, standing alone, does not render a defendant's conviction against the manifest weight of the evidence." *State v. Peeples*, 2014-Ohio-4064, ¶ 21 (10th Dist.). Rather, "[i]f [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other physical evidence does not render the conviction against the manifest weight of the evidence." *State v. Jackson*, 2009-Ohio-6407, ¶ 16 (7th Dist.); *see also State v. Amburgey*, 2006-Ohio-1000, ¶ 6-7 (12th Dist.). Here, the testimony of the State's witnesses established that appellant shot Slone and then ordered Hart to take Slone into the basement and shoot her again.

{¶ 37} Appellant argues that Palmer and Hart were not reliable witnesses because their testimonies were inconsistent whether Palmer actually handed Hart the murder weapon on appellant's order. Appellant also argues that Gray and Crosby were not reliable witnesses because of their criminal history and potential interest in obtaining some benefit by testifying for the State.

{¶ 38} In reviewing a manifest weight challenge, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. *In re E.T.H.*, 2019-Ohio-79, ¶ 14 (12th Dist.). "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Cephas*, 2021-Ohio-4356, ¶ 13 (12th Dist.). Determinations regarding witness credibility, conflicting testimony, and the weight to be given such evidence are primarily for the trier of fact. *In re N.J.M.*, 2010-Ohio-5526, ¶ 39 (12th Dist.). The trier of fact may take note of any inconsistencies in the witness' testimony and resolve them accordingly, believing all, part, or none of each witness' testimony. *State v. Schils*, 2020-Ohio-2883, ¶ 18 (12th Dist.). We find the jury did not lose its way in weighing the

testimony and resolving the inconsistencies; the jury could still conclude that appellant shot Slone, ordered everyone to swear allegiance to him, and then ordered Hart to shoot Slone a second time.[3]

{¶ 39} Appellant's third assignment of error is overruled.

### III. Conclusion

{¶ 40} We find that appellant's right to due process was not violated when the State did not immediately correct Gray's testimony during its case-in-chief, that appellant's RVO specification was supported by sufficient evidence, and that appellant's convictions were not against the manifest weight of the evidence. However, because the trial court made explicit findings under R.C. 2929.14(B)(2)(a)(iv) and (v) at sentencing, which have been excised from the statute by the Ohio Supreme Court as unconstitutional, we reverse and remand for appellant to be resentenced without these findings. In all other respects, the trial court's judgment is affirmed.

{¶ 41} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings not inconsistent with this decision.

BYRNE , P.J., and M. POWELL, J., concur.

---

3. Appellant also argues that Palmer and Hart provided conflicting testimony whether appellant arrived with his brother or whether his brother was already present at the house. This seeming inconsistency can be explained by appellant's brother Brandon already being present at the house and appellant arriving with his other brother, Michael. Even if we assume an inconsistency, this does not negate all the other testimony that appellant murdered Slone.

- 16 -

## <u>J U D G M E N T   E N T R Y</u>

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed, and remanded for the sole and limited purpose of resentencing consistent with the above Opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 65% to appellant and 35% to appellee.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*