[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 156.]

IN RE CALDWELL.

[Cite as *In re Caldwell*, 1996-Ohio-410.]

*Juvenile court authorized to impose consecutive terms of commitment upon a delinquent minor for separate delinquent acts whether or not they arise from the same set of operative facts—R.C. 2151.355.*

A juvenile court is authorized to impose consecutive terms of commitment upon a delinquent minor for separate delinquent acts whether or not they arise from the same set of operative facts.

(Nos. 95-574 and 95-718—Submitted March 19, 1996—Decided July 31, 1996.)

APPEAL from and CERTIFIED by the Court of Appeals for Franklin County, Nos. 94APF07-996 and 94APF07-997.

————————————

{¶ 1} On December 1, 1993, fifteen-year-old appellee, William Caldwell, was driving a stolen car. Thinking he was being pursued by the owner or the police, he drove through a residential area in the dark and ran several stop signs at speeds in excess of seventy miles per hour. Caldwell crashed the stolen car into another car and fled the scene. As a result of his late night escapade, four persons, including a passenger in Caldwell's car, suffered serious physical injury.

{¶ 2} Caldwell was charged in two separate cases, the first with two counts of aggravated vehicular assault against William Manns, the driver of the other car, and Wade Reed, his passenger, the two who suffered the most serious permanent physical injuries, and the second with one count of receiving stolen property. The juvenile court found Caldwell delinquent on all counts. At the dispositional hearing, the court learned that Caldwell had been on probation for an auto theft at the time of this incident on December 1, 1993, and had twice been suspended from

school while the instant cases were pending. Furthermore, the court found that Caldwell showed no signs of remorse for his misconduct.

{¶ 3} After finding that Caldwell was not amenable to rehabilitation within six months, and citing the need for the protection and safety of the community, the juvenile court committed Caldwell to the Ohio Department of Youth Services ("ODYS") for an indefinite term consisting of a minimum period of six months and a maximum period not to extend beyond his twenty-first birthday. The court imposed the indefinite term on each of the three counts and ordered Caldwell to serve the three terms consecutively, thereby requiring that Caldwell serve at least eighteen months in ODYS.

{¶ 4} Caldwell appealed and the cases were consolidated for purposes of appeal. Caldwell maintained that the juvenile court was without jurisdiction under the Revised Code to order consecutive commitments. The Court of Appeals for Franklin County concluded that the juvenile court did not have authority to order Caldwell to serve consecutive commitments. Accordingly, the court reversed and remanded the cases to the juvenile court for further proceedings.

{¶ 5} The court of appeals also entered an order certifying that its judgment was in conflict with decisions from the Court of Appeals for Cuyahoga County in *In re Samkas* (1992), 80 Ohio App.3d 240, 608 N.E.2d 1172, and *In re Bremmer* (Apr. 1, 1993), Cuyahoga App. No. 62088, unreported, on the following question: "Whether or not juvenile courts have jurisdiction to impose consecutive commitment orders to the Ohio Department of Youth Services."

{¶ 6} This cause is now before this court upon determination that a conflict exists and pursuant to the allowance of a discretionary appeal.

————————————

*Michael Miller,* Franklin County Prosecuting Attorney, and *Steven L. Taylor,* Assistant Prosecuting Attorney, for appellant.

*Kevin Durkin,* for appellee.

*Betty D. Montgomery,* Attorney General, *Jeffrey S. Sutton,* State Solicitor, and *Simon B. Karas,* Deputy Chief Counsel, urging reversal for *amicus curiae,* Ohio Attorney General.

*David H. Bodiker,* Ohio Public Defender, *Pamela A. Conger* and *Scott Lorenzo,* Assistant Public Defenders*, Judith Stevenson,* Franklin County Public Defender, *Paul Skendelas* and *David L. Strait,* Assistant Public Defenders, urging affirmance for *amici curiae,* Ohio Public Defender and Franklin County Public Defender.

————————————

**STRATTON, J.**

{¶ 7} The issue before the court is whether juvenile courts may impose consecutive terms of commitment upon a delinquent minor. To reach the proper conclusion in this matter, the court must look at the legislative intent behind juvenile commitment orders.

{¶ 8} Juvenile delinquency is a serious issue in our society. The question has been and continues to be - What does one do with a child who commits serious offenses? The legislative purpose regarding such errant children has been laid out in R.C. 2151.01: to provide for the care, protection, and mental and physical development of children, to protect the public from the wrongful acts committed by juvenile delinquents, and to rehabilitate errant children and bring them back to productive citizenship, or, as the statute states, to supervise, care for and rehabilitate those children. Punishment is not the goal of the juvenile system, except as necessary to direct the child toward the goal of rehabilitation.

{¶ 9} We as a society believe that our goal should be to rehabilitate, wherever possible, a child who may be young enough that the behavior can be molded and the child directed away from delinquent and criminal acts and toward a productive and responsible future. Therefore, our inquiry must begin with the

premise that the goal of the juvenile code is to rehabilitate, not to punish, while protecting society from criminal and delinquent acts during rehabilitation.

{¶ 10} We also recognize that juvenile delinquency is a serious and increasing problem in our society. There is an increasing level of violence in the delinquent acts committed by juveniles. The more common acts of vandalism and truancy seem to be replaced by more violent acts of assault, robbery, and even murder. Juvenile courts struggle constantly with the need to protect society, the goal of rehabilitation, and this rising tide of violent juvenile delinquency.

{¶ 11} R.C. 2151.355 governs how juvenile courts deal with the commitment of a child when necessary for his or her rehabilitation.[1] Paragraphs A(1) through A(10) set forth a number of options, ranging from a simple fine or restitution to commitment of the juvenile to the custody of ODYS. The relevant subsection in effect at the time of Caldwell's delinquent acts permitted the court to do the following:

"(4) If the child was adjudicated delinquent by reason of having committed an act that would be * * * a felony of the third or fourth degree if committed by an adult, commit the child to the legal custody of the department of youth services for institutionalization for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the child's attainment of the age of twenty-one years." Am.Sub.H.B. No. 725, 144 Ohio Laws, Part IV, 6371.

{¶ 12} After a careful review of the legislative intent, this court disagrees with the court of appeals' conclusion and finds that the juvenile court did have authority to order consecutive terms of commitment under the provisions of R.C. 2151.355(A)(11), which authorized a court to:

---

1. R.C. 2151.355 has been amended since the incident occurred which gave rise to this case. The revised statute expressly provides for consecutive terms of commitment. R.C. 2151.355(B)(2), as amended by 1995 Am.Sub.H.B. No. 1.

"(11) *Make any further disposition that the court finds proper*, except that the child shall not be placed in any state penal or reformatory institution, county, multicounty or municipal jail or workhouse, or any other place where any adult convicted of crime, under arrest, or charged with crime is held." (Emphasis added.) Am.Sub.H.B. No. 725, 144 Ohio Laws, Part IV, 6372.

{¶ 13} In this case, the court of appeals found that because R.C. 2921.34 required a trial judge to impose consecutive terms of commitment on a juvenile found to be guilty of escape, lack of any specific authorization for consecutive terms of commitment in R.C. 2151.355 meant that the phrase "[m]ake any further disposition that the court finds proper" could not be read broadly enough to authorize consecutive terms.

{¶ 14} The Eighth District Court of Appeals reached the opposite conclusion in *In re Samkas* (1992), 80 Ohio App. 3d 240, 608 N.E.2d 1172. In *Samkas,* the court found that the phrase "[m]ake any further disposition that the court finds proper" grants authority to the juvenile court to impose consecutive commitment terms. In rejecting the contention that consecutive terms were punitive rather than rehabilitative, that court summed up its rationale:

"It is beyond cavil that each individual learns at his own pace through different means and methods. Some individuals learn quickly and others take longer to learn that one does not take property of another without permission either by violence or otherwise. Some children learn this lesson early in life; appellant obviously had not learned this lesson at age seventeen years. Some juveniles learn only through detention which is itself a means and method of education and rehabilitation. Therefore, the General Assembly passed R.C. 2151.355(A)(10) [now (A)(11)], which reads as follows:

"'(10) Make *any* further disposition that the court finds proper.' (Emphasis added.)

"Obviously the General Assembly by adding the word *any,* which it was not required to do, gave the trial judge discretion to further implement the rehabilitative disposition of a juvenile under R.C. 2151.355." *Id.* at 244, 608 N.E.2d at 1174.

{¶ 15} In *In re Bremmer* (Apr. l, 1993), Cuyahoga App. No. 62088, unreported, relying on *Samkas*, the court further examined the legislative intent of the statute and concluded that by using the word "any" in paragraph (A)(11), which the General Assembly was not required to do, it gave the trial judge discretion to take "any" steps the judge believes necessary to fully and completely implement the rehabilitative disposition of a juvenile under R.C. 2151.355. This includes the authority to order consecutive terms of commitment.

{¶ 16} By including this catchall provision in R.C. 2151.355, the General Assembly must have intended to leave to the discretion of the trial judge, who is able to view the evidence and witnesses at the dispositional hearing, whether some further disposition is required to fully and completely rehabilitate the delinquent.

{¶ 17} As the *Bremmer* court realized, the requirement of consecutive terms for escape actually buttresses this statutory interpretation. As in R.C. 2929.71, requiring actual incarceration for a felony carried out with a firearm, the legislative intent was to remove discretion from the trial court when escape is involved and to make it mandatory that a trial court require the juvenile to serve a term of commitment for escape consecutively to any other terms of commitment. This in no way suggests that other terms of commitment cannot also be consecutive on a discretionary basis. When read together, R.C. 2921.34 and 2151.355(A)(11) require consecutive terms for escape, but allow them on a discretionary basis for other types of offenses.

{¶ 18} The *Caldwell* court of appeals attempted to distinguish *Samkas* and *Bremmer* on the basis that they involved unrelated acts rather than separate delinquent acts arising out of one course of conduct such as those committed by Caldwell. This type of analysis ignores the purposes of rehabilitation, as well as

the plain language of the statute. A child who commits two separate robberies, each with a single victim on two separate days may need less rehabilitation than a child who robs ten different people in a store at one time. The court must look at not only the delinquent act but also the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile and other societal factors that determine what length of commitment is appropriate for rehabilitation.

{¶ 19} In addition, R.C. 2151.355(A)(4) stated that the court may order commitment of a child "adjudicated delinquent by reason of having committed *an act* * * * for an indefinite term consisting of a minimum period of six months." (Emphasis added.) When this subsection is read together with the phrase "[m]ake any further disposition that the court finds proper," it is clear that a term of commitment applies to an individual act. The court may order a separate disposition for each separate act committed. If the legislature had intended the court to order commitment for a minimum term of six months for multiple acts, as well as a single act, presumably the legislature would have used the phrase "by reason of having committed acts."

{¶ 20} As a safety valve, the juvenile court maintains supervisory powers over early release of the delinquent child. If the court, after ordering consecutive terms of commitment, determines that the child has been rehabilitated before the minimum commitment period ends and could be safely returned to the custody of his or her parents or the community, R.C. 2151.38 authorizes the supervising court to grant early release of the delinquent. The provisions of the early release statute coupled with the discretionary power of a juvenile court to order concurrent or consecutive terms of commitment strike a desired balance between the goals of confining the juvenile for purposes of rehabilitation and the release of the juvenile to society once satisfactory progress has been made toward rehabilitation.

{¶ 21} Our decision is consistent with the underlying purposes and goals of the juvenile court system, *i.e.,* supervision, care and rehabilitation of the delinquent

youth. When a delinquent child has exhibited little remorse for his or her actions, has committed multiple delinquent acts and exhibited little respect for the safety of others, a court may determine that a longer period may be necessary for the child to be rehabilitated. The trial court has the opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved. The statute authorizes the court to issue orders of disposition appropriate to each child.

{¶ 22} This interpretation does not tend to promote punishment rather than rehabilitation. Some juveniles exhibit more serious criminal tendencies and behavior than do other juveniles. It would be unfair to require that a child who has committed numerous delinquent acts be committed for the same period of time as a child who was determined to be delinquent for only one act. The first child should not be rewarded for a crime spree by an interpretation that limits the discretion of a juvenile court. The juvenile court is in the best position to evaluate the facts of each case to determine whether a longer period of rehabilitation may be needed under each separate fact pattern. The juvenile court's discretion is balanced by the provisions of R.C. 2151.38 which provide for a child's early release from ODYS.

{¶ 23} We are instructed by R.C. 2151.01 to liberally interpret and construe R.C. Chapter 2151 to effectuate its purposes. We believe it was the purpose and intent of the General Assembly to authorize consecutive terms of commitment pursuant to R.C. 2151.355(A)(4) and (11) as they existed in 1993.

{¶ 24} In light of the serious nature of appellee's actions on December 1, 1993, his obvious lack of remorse for his conduct, his disregard for school, and his prior probation for auto theft, the juvenile court acted well within its discretion to order consecutive terms of commitment. The court deemed it to be in the interest of public safety and necessary for the appellee's rehabilitation to require him to spend more than one period of commitment with the ODYS.

**{¶ 25}** The statute in effect at the time of appellee's delinquent acts did not prohibit consecutive terms of commitment. It provided several alternatives from which the juvenile court might tailor its disposition of each particular case, including the authority to make any further disposition that the court found proper. We hold that a juvenile court is authorized to impose consecutive terms of commitment upon a delinquent minor for separate delinquent acts whether or not they arise from the same set of operative facts. Therefore, we reverse the court of appeals and order that the judgment of the juvenile court be reinstated in accordance with this decision.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS and RESNICK, JJ., concur separately.

———————————

**ALICE ROBIE RESNICK, J., concurring.**

**{¶ 26}** I concur in the syllabus and the judgment, but write separately in order to further underscore the fact that R.C. 2151.355 allows the juvenile court broad discretion in fashioning the juvenile's disposition order upon a finding of delinquency and that there is no abuse of that discretion when consecutive sentences are imposed.

**{¶ 27}** R.C. 2151.01 directs the courts to liberally interpret and construe R.C. Chapter 2151 so as to effectuate the following purposes:

"(A) To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code;

"(B) To protect the public interest in removing the consequences of criminal behavior and the taint of criminality from children committing delinquent acts and to substitute therefor a program of supervision, care, and rehabilitation;

9

"(C) To achieve the foregoing purposes, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety[.]"

**{¶ 28}** By authorizing courts to liberally construe the juvenile court statutes, the General Assembly recognized the multitude of situations which come before courts requiring them to employ various sanctions when disposing of juvenile delinquency cases. Therefore, the General Assembly provided the courts with broad discretion in R.C. 2151.355(A)(11) to fashion creative dispositions that will effectuate the statutory purposes. I fail to see how commitment for consecutive terms would be excluded from the discretion granted in the language "any further disposition that the court finds proper." To give this phrase its plain and ordinary meaning and the only sensible effect, we must interpret it as giving the juvenile judge broad discretionary authority to fashion dispositions for delinquents that are not specifically enumerated in the juvenile code as long as the dispositions are to further implement the rehabilitation of the delinquents. The juvenile court is best able to view the evidence and witnesses at the dispositional hearing and therefore determine what is required to fully and completely rehabilitate the delinquent juvenile.

**{¶ 29}** As noted in a footnote in the majority opinion, the General Assembly revised R.C. 2151.355 to include a provision specifically authorizing the juvenile courts to order commitment for consecutive terms. By adding this provision, the General Assembly intended to end the apparent confusion among the courts of appeals as to juvenile courts' authority to make such a disposition.

**{¶ 30}** The juvenile involved in this case makes clear that the court in *In re Samkas* (1992), 80 Ohio App.3d 240, 608 N.E.2d 1172, was correct when it found that the needs of rehabilitation vary from juvenile to juvenile. One type of commitment does not fit all juveniles. Juvenile courts need broad discretion to fashion the appropriate time for complete and lasting rehabilitation. The trial court

did not abuse its discretion by determining that the juvenile in this case required consecutive terms of commitment in order to better effectuate rehabilitation.

DOUGLAS, J., concurs in the foregoing concurring opinion.

————————————