[Cite as *In re R.E.*, 2014-Ohio-3595.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100954

# IN RE: R.E.

# A Minor Child

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 13108454

**BEFORE:** McCormack, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 21, 2014

**ATTORNEYS FOR APPELLANT**

Harvey B. Bruner
John D. Mizanin
Harvey B. Bruner Co., L.P.A.
The Hoyt Block Building
700 W. St. Clair Ave., #110
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Eben McNair
Assistant Prosecuting Attorney
Juvenile Justice Center, 4th Floor
9300 Quincy Ave.
Cleveland, OH 44106

TIM McCORMACK, J.:

**{¶1}** Juvenile-appellant, R.E., appeals his commitment to the Ohio Department of Youth Services ("DYS"). Following a review of the record, we affirm the decision of the trial court.

## Procedural History

**{¶2}** On June 4, 2013, R.E. was charged with robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree, in Cuyahoga County Court of Common Pleas, Juvenile Division, Case No. DL-13108454. He denied the charges in the complaint.

**{¶3}** On December 18, 2013, R.E. entered into a plea agreement. At that time, R.E. had two additional cases pending in juvenile court: Case No. DL-13108680, domestic violence, a misdemeanor of the first degree, and Case No. DL-13114245, assault, also a misdemeanor of the first degree. Under the plea agreement, the state agreed to amend the complaint in DL-13108454 to robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree. In exchange, R.E. admitted to the amended complaint in DL-13108454 and he admitted to the domestic violence in DL-13108680 and the assault in DL-13114245.

**{¶4}** The court engaged in a colloquy and ensured that R.E. understood his rights, the nature of the charges against him, and that his change in plea indicated an admission of the truth of the charges. The court also advised R.E. of the potential penalties for each charge, ensuring that R.E. understood that the court could place R.E. in

DYS for six months up to his 21st birthday for the robbery and in the detention center for 90 days for the domestic violence and the assault. R.E. admitted the charges, and the court proceeded to disposition.

{¶5} At the dispositional hearing, R.E., R.E.'s treating physician, attorney, community control officer, mother, and the placement coordinator and the prosecutor were present. Following the hearing, the court committed R.E. to nine months at DYS, allowing for resubmission to a community corrections facility at a later date in order to explore the possibility of R.E.'s admission to a residential treatment program.

**Disposition**

{¶6} In his sole assignment of error, R.E. contends that the trial court's "sentence" did not accord with the overriding purposes of juvenile dispositions. In support of his claim, he argues that one of the court's less severe sanctions would better serve R.E.'s care, protection, and mental and physical health.

{¶7} A juvenile court has broad discretion to fashion an appropriate disposition for a child adjudicated delinquent. *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, ¶ 6. The court may commit the child to the temporary custody of any school, camp, institution, or other residential treatment facility operated for the care of delinquent children, place the child in a detention facility, or place the child on community control. R.C. 2152.19(A). Community control includes, but is not limited

to, basic probation supervision, intensive probation supervision, community service, and house arrest. R.C. 2152.19(A)(4).

{¶8} The court may also commit the child to the legal custody of DYS for secure confinement for an act that would be a felony of the third degree if committed by an adult "for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the child's attainment of twenty-one years of age." R.C. 2152.16(A)(1)(e).

{¶9} Regardless of the disposition, the trial court must impose dispositions that are "reasonably calculated" to achieve certain statutory purposes. R.C. 2152.01(B); *In re K.H.*, 8th Dist. Cuyahoga Nos. 99981 and 99982, 2013-Ohio-5743, ¶ 22. The "overriding purposes" include providing for the care, protection, and mental and physical development of children subject to this chapter, protecting the public interest and safety, holding the offender accountable for the offender's actions, restoring the victim, and rehabilitating the offender. R.C. 2152.01(A). The statute further mandates that the juvenile court achieve those overriding purposes through "a system of graduated sanctions and services." *Id.*

{¶10} The juvenile court's order of disposition will not be reversed absent an abuse of discretion. *D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, ¶ 6. An abuse of discretion suggests that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140

(1983).   Under this standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

{¶11} Here, the record reflects that the trial court considered the overriding purposes of R.C. 2152.01 and committed R.E. to DYS when compelled by the evidence to do so.

{¶12} At the hearing, the court engaged in a discourse with R.E., his attorney, and the prosecutor concerning the three matters to which R.E. admitted.   In the context of the robbery, the court learned that R.E., along with two other juvenile defendants, started a conversation with the victim on the street, punched or struck him in the head, and stole his mobile phone.   The domestic violence charge consisted of an argument with his brother while at home, where his mother sought police intervention when R.E. punched his brother in the mouth.   The assault occurred while R.E. was in the detention center, wherein R.E. assaulted another resident of the facility.   During this exchange, the court inquired about the large number of fights in the detention center with which R.E. has been involved.   R.E. explained that the fights have been gang-related.   The court then spoke at length with R.E. regarding his gang involvement, expressing frustration with R.E.'s inability to avoid violating home detention.

{¶13} The court considered R.E.'s mental and physical health.   Dr. Robert Needleman, a developmental behavioral pediatrician who has treated R.E. since 2010, testified that R.E. suffers from attention deficit disorder and depression, for which he has

prescribed various medications for R.E., as well as "conduct disorder, adolescent onset type," and "perhaps other psychiatric issues yet to be defined." He also testified that R.E. suffers from a mild form of sickle cell disease, which manifests itself with an episode of pain crisis "perhaps once a year or less frequently." He noted, however, that R.E.'s record of sickle cell episodes "is less frequently than that." Dr. Needleman stated that he has not known R.E. to have an episode in the time he's been treating him. He also stated that he has not been able to treat R.E. on a regular basis due to R.E.'s repeated admissions to the detention center.

{¶14} The court inquired of the doctor at length regarding R.E.'s sickle cell disease, its symptoms, the possible causes of an episode, and the nature of two recent episodes that occurred while R.E. was in solitary confinement. During this inquiry, Dr. Needleman informed the court that R.E.'s most recent hospitalization was not necessarily related to his sickle cell disease, as originally presumed, but rather he believed the episode to be a panic attack. And R.E. admitted to faking one of the sickle cell episodes while in confinement.

{¶15} R.E.'s community control officer, Charles Williams, testified that R.E. had been on community control since November 2012 for a theft charge. Williams testified that R.E. had not been compliant with the court's orders to complete a psychological evaluation, complete 20 hours of community service, and attend school daily. Williams stated that within the first weeks of having R.E.'s case, he confirmed R.E.'s prominent

gang involvement and his reputation for fighting in the community. R.E.'s gang is known for fights, robberies, and assaults.

{¶16} The trial court also considered alternative placement options. Various placement personnel testified regarding the availability of residential treatment programs. This testimony revealed that there were currently no residential treatment facilities available to R.E. due to his sickle cell diagnosis. One of the placement officers testified that several residential facilities had been explored as possible placement options; however, the facilities were unwilling to assume the risk of R.E. having a sickle cell episode while at their facility, especially in light of the fact that R.E. had been removed from other detention centers approximately three times because of what appeared to be sickle cell episodes.

{¶17} Prior to committing R.E. to DYS, the court noted that "every time we've tried to get [R.E.] in the community he has done something, either cut his [home detention] bracelet off [or] commit[ted] another act," stating "[that] is why we're here today." In fashioning R.E.'s commitment, the court stated that it wanted to protect the community and R.E.'s family. It also stated that it wanted to help R.E. lead a more productive life and that it did not prefer DYS "because it's really a waste." However, the court noted that it was compelled to commit R.E. to DYS based upon R.E.'s medical diagnosis and the evidence presented at the hearing, stating that "[R.E.'s] stuck with whatever he was faking because I can't overrule a medical diagnosis." The court then

committed R.E. to DYS for nine months, allowing for resubmission to a community corrections facility in order to explore the possibility of R.E.'s future admission to a residential treatment program.

{¶18} In light of the above, we find that the trial court did not abuse its broad discretion in committing R.E. to nine months in DYS. The record demonstrated that the court considered the overriding purposes of juvenile disposition, R.E. has repeatedly failed to comply with community control sanctions, and alternative residential treatment facilities indicated their disinclination to accept R.E. The trial court's disposition was therefore not arbitrary or unreasonable. R.E.'s sole assignment of error is overruled.

{¶19} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated. Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR