**[Cite as *In re J.S.*, 2020-Ohio-3413.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

    J.S.,

ALLEGED DELINQUENT CHILD.

CASE NO. 5-19-22

O P I N I O N

IN RE:

    J.S.,

ALLEGED DELINQUENT CHILD.

CASE NO. 5-19-23

O P I N I O N

IN RE:

    J.S.,

ALLEGED DELINQUENT CHILD.

CASE NO. 5-19-24

O P I N I O N

**Appeals from Hancock County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 20182254, 20192131 and 20192119**

**Judgments Affirmed**

**Date of Decision:   June 22, 2020**

APPEARANCES:

    *Abigail Christopher* **for Appellant**

    *Heather M. Pendleton* **for Appellee**

**PRESTON, J.**

**{¶1}** Juvenile-appellant, J.S., appeals the June 7, 2019 judgment of disposition of the Hancock County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm.

**{¶2}** On December 17, 2018, J.S. went absent without leave from the Doug Lee Group Home located in Fulton County, Ohio. Subsequently, on December 19, 2018, a complaint was filed in the Fulton County Court of Common Pleas, Juvenile Division charging J.S. with four counts: Count One of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony if committed by an adult; Count Two of grand theft of a firearm in violation of R.C. 2913.02(A)(1), a third-degree felony if committed by an adult; Count Three of safecracking in violation of R.C. 2911.31(A), a fourth-degree felony if committed by an adult; and Count Four of possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony if committed by an adult. (Case No. 20182254, Doc. No. 1). On December 27, 2018, the case was transferred to the Hancock County Court of Common Pleas, Juvenile Division and assigned case number 20182254. (*Id.*).

**{¶3}** On December 28, 2018, J.S. attended an initial appearance where he entered denials to the charges. (Case No. 20182254, Doc. No. 4). On March 1, 2019, J.S. appeared before the trial court, withdrew his denials, and entered admissions to all charges. (Case No. 20182254, Doc. No. 11). The trial court

accepted J.S.'s admissions, found him to be a delinquent child as defined by R.C. 2152.02, and ordered a psychological evaluation. (*Id.*).

{¶4} On March 22, 2019, while in the Wood County Juvenile Detention Center awaiting disposition in Case Number 20182254, J.S. intentionally removed the cover from the sprinkler head in his room causing the device to spray water and flood the wing, resulting in the evacuation of the entire facility. (Case No. 20192119, Doc. No. 1). Consequently, on March 26, 2019, a complaint was filed in the Wood County Court of Common Pleas, Juvenile Division charging J.S. with a single count of vandalism in violation of R.C. 2909.05(B)(1)(b), a fifth-degree felony if committed by an adult. (*Id.*). On May 2, 2019, J.S. entered an admission to the charge in the complaint. (*Id.*). The trial court accepted J.S.'s admission and found him to be a delinquent child as defined by R.C. 2152.02. (*Id.*). That same day, the case was transferred to the Hancock County Court of Common Pleas, Juvenile Division for adjudication and assigned case number 20192119. (*Id.*). The order of transfer was filed on May 10, 2019. (*Id.*).

{¶5} On May 29, 2019, while in the Wood County Juvenile Detention Center awaiting disposition in case numbers 20182254 and 20192119, J.S. crawled between a gap in the recreation yard fencing and left the property. (Case No. 20192131, Doc. No. 1). On May 31, 2019, a complaint was filed in the Wood County Court of Common Pleas, Juvenile Division charging J.S. with escape in

violation of R.C. 2921.34(A)(1), a second-degree felony if committed by an adult. (*Id.*). That same day, the matter was transferred to the Hancock County Court of Common Pleas, Juvenile Division and assigned case number 20192131. (*Id.*).

{¶6} On June 7, 2019, J.S. appeared before the trial court for adjudication in case number 20192131 and disposition in case numbers 20182254 and 20192119.[1] (Case No. 20182254, Doc. No. 25); (Case No. 20192119, Doc. No. 3); (Case No. 20192131, Doc. No. 3). At the hearing, J.S. first entered an admission to the charge in the complaint in case number 20192131. (Case No. 20192131, Doc. No. 3); (June 7, 2019 Tr. at 11-13). The trial court accepted J.S.'s admission and found him to be a delinquent child. (Case No. 20192131, Doc. No. 3); (June 7, 2019 Tr. at 13-14). The trial court then proceeded to disposition for the four counts in case number 20182254, the single count of vandalism in case number 20192119, and the single count of escape in case number 20192131. (Case No. 20182254, Doc. No. 25); (Case No. 20192119, Doc. No. 3); (Case No. 20192131, Doc. No. 3).

{¶7} With respect to Count One in case number 20182254, the trial court committed J.S. to the legal care and custody of the Ohio Department of Youth Services ("DYS") for a minimum of one year and a maximum period not to exceed J.S.'s 21st birthday. (Case No. 20182254; Doc. No. 25); (June 7, 2019 Tr. at 26).

---

[1] Although the three cases were transferred to the Hancock County Court of Common Pleas, Juvenile Division, a visiting judge who was familiar with J.S. and his history in the juvenile court system presided over the matter. (*See* Case No. 20182254, Doc. No. 25; Case No. 20192119, Doc. No. 3; Case No. 20192131, Doc. No. 3); (June 7, 2019 Tr. at 21).

As to each of Counts Two, Three, and Four in case number 20182254, the trial court committed J.S. to the legal care and custody of DYS for a minimum of six months and a maximum period not to exceed J.S.'s 21st birthday.  (Case No. 20182254; Doc. No. 25); (June 7, 2019 Tr. at 26-27).  The trial court ordered that the commitments for all four counts run consecutively to each other for an aggregate minimum term of two years and six months in case number 20182254.  (*Id.*); (*Id.*). With respect to case number 20192119, the trial court committed J.S. to DYS for a minimum of six months and a maximum period not to exceed J.S.'s 21st birthday. (Case No. 20192119, Doc. No. 3); (June 7, 2019 Tr. at 26).  With respect to case number 20192131, the trial court committed J.S. to DYS. for a minimum of one year and a maximum period not to exceed J.S.'s 21st birthday.  (Case No. 20192131, Doc. No. 3); (June 7, 2019 Tr. at 26).  The trial court further ordered that the commitments in all three cases run consecutively for an aggregate minimum term of four years.  (Case. No. 20182254, Doc. No. 25); (Case No. 20192119, Doc. No. 3); (Case No. 20192131, Doc. No. 3); (June 7, 2019 Tr. at 26-27).  That same day, the trial court filed its judgment entries of adjudication.  (Case No. 20182254, Doc. No. 25); (Case No. 20192119, Doc. No. 3); (Case No. 20192131, Doc. No. 3).

{¶8} On July 12, 2019, J.S. filed his notices of appeal.[2] (Case No. 20182254, Doc. No. 30); (Case No. 20192119, Doc. No. 6); (Case No. 20192131, Doc. No. 6). He raises one assignment of error.

### Assignment of Error

**The Court abused its discretion by failing to consider the overriding purposes of juvenile dispositions when it imposed a minimum four-year cumulative commitment to DYS as a disposition. (6/7/2019 T. pp. 24-26; 29-30)**

{¶9} In his assignment of error, J.S. argues that the trial court abused its discretion by imposing a commitment to DYS and therefore punishing J.S., rather than focusing on the overriding purposes of juvenile court dispositions. (Appellant's Brief at 2-3). For the reasons that follow, we disagree.

{¶10} We review a juvenile court's disposition for a child adjudicated delinquent under an abuse-of-discretion standard. *In re L.R.*, 3d Dist. Defiance No. 4-19-19, 2020-Ohio-2990, ¶ 7. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Under this standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

---

[2] J.S. filed a motion for leave to file a delayed appeal contemporaneously with his notice of appeal. (Case No. 20182254, Doc. No. 30); (Case No. 20192119, Doc. No. 6); (Case No. 20192131, Doc. No. 6). On August 1, 2019, this Court granted J.S.'s motion for leave to file a delayed appeal. (Case No. 20182254, Doc. No. 38); (Case No. 20192119, Doc. No. 14); (Case No. 20192131, Doc. No. 14).

{¶11} "[A] juvenile court has broad discretion to craft an appropriate disposition for a child adjudicated delinquent." *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, ¶ 6, citing R.C. 2152.19(A)(4). The overriding purposes for disposition of juvenile offenders are "to provide for the care, protection, and mental and physical development of children * * *, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A). "These purposes shall be achieved by a system of graduated sanctions and services." R.C. 2152.01(A).

{¶12} "'The various traditional juvenile dispositions available to a trial court are delineated in R.C. 2152.16, 2152.17, 2152.19, and 2152.20.'" *In re L.R.* at ¶ 9, quoting *In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, ¶ 32 (O'Connor, C.J., dissenting). Specifically, a juvenile court may commit the juvenile to the care and custody of DYS, place the juvenile in a detention facility or on house arrest, impose fines, or impose any of the other options or a combination of options described in R.C. Chapter 2152. *Id.*, citing *In re H.V.* at ¶ 33 (O'Connor, dissenting), citing R.C. 2152.16, 2152.19(A)(3), (4)(j), and 2152.20(A)(1).

{¶13} "Because the juvenile court 'has the opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved,' [R.C. 2152.01] authorizes it to issue orders of disposition appropriate to each child." *In re B.K.*, 2d Dist. Greene No.

2017-CA-32, 2018-Ohio-864, ¶ 10, quoting *In re Caldwell*, 76 Ohio St.3d 156, 160-161 (1996). Accordingly, "the juvenile court considers not only the delinquent act, but 'the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile and other societal factors[.]'" *Id.*, quoting *In re Caldwell* at 160.

{¶14} As second-degree felonies if committed by an adult, burglary and escape carry the possibility of commitment to the legal care and custody of DYS "for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed the child's attainment of twenty-one years of age." R.C. 2152.16(A)(1)(d); R.C. 2911.12(A)(2), (D); R.C. 2921.34(A)(1), (C)(2)(a). Here, with respect to the adjudications for burglary and escape, the juvenile court committed J.S. to the legal care and custody of DYS for a minimum period of one year and a maximum period not to exceed J.S.'s attainment of 21 years of age. As third, fourth, or fifth degree felonies if committed by an adult, grand theft of a firearm, safecracking, possessing criminal tools, and vandalism carry the possibility of commitment to the legal care and custody of DYS "for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the child's attainment of twenty-one years of age." R.C. 2152.16(A)(1)(e); R.C. 2913.02(A)(1), (B)(4); R.C. 2911.31(A), (B); 2923.24(A), (C); R.C. 2909.05(B)(1)(b), (E). Here, with respect to each of the adjudications for grand

theft of a firearm, safecracking, possessing criminal tools, and vandalism, the juvenile court committed J.S. to the legal care and custody of DYS for a minimum term of six months and a maximum period not to exceed J.S.'s attainment of 21 years of age. Accordingly, J.S.'s dispositions fall within the statutory ranges.

{¶15} Nevertheless, J.S. argues that the juvenile court abused its discretion by imposing "a solely punitive disposition." (Appellant's Brief at 3-4). J.S. contends that rather than committing him to DYS, the trial court should have considered alternative placement options, such as residential treatment facilities. First, despite J.S.'s argument that his commitment to DYS is "solely punitive," "commitment to DYS is substantially different from a prison sentence." *In re D.C.*, 1st Dist. Hamilton No. C-180354, 2019-Ohio-4860, ¶ 38. "A commitment to DYS allows the state to protect a child from negative outside influences and allows the child to obtain treatment, support and education." *Id.*, citing *In re J.T.*, 8th Dist. Cuyahoga Nos. 105311 and 105316, 2017-Ohio-7723, ¶ 33. Additionally, "[p]rotection of the public interest and safety and holding a juvenile offender accountable for his actions are among the 'overriding purposes' of juvenile disposition." *In re K.M.C.*, 8th Dist. Cuyahoga No. 103449, 2016-Ohio-5322, ¶ 9.

{¶16} Here, it is clear from the record that the trial court entered its disposition after considering the purposes of juvenile dispositions. At the disposition hearing, the trial court specifically stated that it made a reasonable effort

finding "that the court has exhausted everything else available to it to" "rehabilitate this young man" and "protect the community" because J.S. "has shown by his actions that the community is not safe when he is not locked up." (June 7, 2019 Tr. at 28-29).

{¶17} Further, the record supports the trial court's findings. At the disposition hearing, J.S.'s guardian ad litem ("GAL") recognized that J.S. "has had a hard start to his life." (June 7, 2019 Tr. at 18). The GAL acknowledged that from the time of J.S.'s first involvement in the juvenile court system approximately four years prior, the juvenile court system "[has] tried everything" including committing J.S. to less restrictive facilities. (*Id.* at 18-19). However, J.S. "has caused problems and committed crimes at every step of the way." (*Id.* at 19). The GAL stated that he did not "have any confidence that if [J.S. is] put in a residential facility or anything other than a secured environment that he's not going to commit crimes" and it is "not in his best interests if he is released." (*Id.*). Further, the GAL stated he is "not sure [he has] ever made a recommendation like this," but given the circumstances, he believes J.S. "needs to be confined until he learns that when he is in a less-restricted environment * * * that he cannot commit crimes." (*Id.*).

{¶18} J.S.'s father also stated that "putting [J.S.] in a lesser environment than DYS is not going to be suitable for him." (*Id.* at 20). In support of his statement,

J.S.'s father referenced "multiple" escape attempts J.S. made during his commitment to a less restrictive facility. (*Id.*).

{¶19} In support of his contention that the trial court was concerned primarily with punishing him rather than furthering the goals of juvenile court dispositions, J.S. references the psychological evaluation performed in preparation for the disposition hearing. (*Id.* at 26.) (*See* Case No. 20182254, Doc. No. 15). Specifically, J.S. references the report's acknowledgement of his lack of familial support and history of untreated mental health and substance abuse issues that could be addressed at a treatment facility. (Appellant's Brief at 3). (*See* Case No. 20182254, Doc. No. 15). The report also states that treating J.S.'s underlying mental illness and substance abuse issues and providing J.S. with a consistent placement would decrease his likelihood of recidivism. (Appellant's Brief at 3). (*See* Case No. 20182254, Doc. No. 15).

{¶20} However, the report concludes that "[J.S.] presents us with a dilemma as he claims he just wants one more chance in a therapeutic environment. However, he does not appear to be able to benefit from that because he keeps getting into more trouble." (Doc. No. 15). The report also acknowledges that "[f]or the most part, [J.S.] does appear to be scrambling to keep from going back to DYS." (*Id.*).

{¶21} Moreover, the juvenile probation department prepared a report in anticipation of J.S.'s disposition hearing which outlined the department's

assessment of J.S. and recommendation for disposition.  (*See* Case No. 20182254, Doc. No. 14).  The trial court referenced this document at the hearing.  (June 7, 2019 Tr. at 21).  (*See* Case No. 20182254, Doc. No. 14).  The reporting officer stated that J.S. received a score of 29 on the Ohio Youth Assessment System Disposition Tool, which signifies that J.S. is at a high level of risk of committing future delinquent or criminal acts.  (Case No. 20182254, Doc. No. 14).  The reporting officer noted that J.S. "has been afforded multiple attempts at counseling, treatment, and bouts of incarceration, all to little avail." (*Id.*).  Further, the report stated that "[b]ased upon his history and level of non-compliance with prior and current Court Orders, as well as his continued defiance of staff directions while in detention, it is this writer's opinion that [J.S.]'s prognosis, at this time, remains grave." (*Id.*).  The reporting officer concluded that "[u]nfortunately, based upon the significantly high level of risk, protecting others from [J.S.] must be the priority at this time." (*Id.*).

{¶22} At the disposition hearing, the trial court stated that he was "very well aware of and intimately familiar with [J.S.'s] past history because [he] handled a great deal of it." (June 7, 2019 Tr. at 21).  Additionally, prior to pronouncing his disposition, the trial court stated that it is "very concerned about several things." (*Id.*).  The trial court referenced the charges of burglary and grand theft of a firearm and noted that "the danger of [J.S.'s] actions seem[ ] to be going up." (*Id.* at 21-22).  The trial court stated that it was particularly troubled because J.S.'s actions

underlying the charges of burglary and grand theft of a firearm involved entering the homes of individuals who are likely to be in possession of firearms.  (*Id.*).  J.S. was therefore putting himself at risk of being shot or shooting someone.  (*Id.* at 22). The trial court also expressed its concern over J.S.'s charge of escape and noted that not only did J.S. attempt to escape from a secured facility, he was actually successful in doing so.  (*Id.*).  Thus, the trial court noted that "things are getting more serious." (*Id.*).  The trial court further acknowledged that the six offenses before the court for disposition all occurred in a short period of time.  (*Id.* at 22-23).

{¶23} The trial court then outlined its previous attempts at rehabilitating J.S. as follows:

> We have previously tried multiple things with you, basically everything the court has available to it.  Short-term house arrest, short-term detention, we've sent you to the facility in Bowling Green which subsequently recently you escaped from, the Children's Center of Ohio which is a treatment center, probation, electronic monitoring, drug testing, counseling including intensive home-based therapy, and the list goes on.
>
> We have literally exhausted what the court has available to it to try to deal with you at the level of offenses that you have put yourself in. * * *

(*Id.* at 23).

{¶24} Nevertheless, although J.S. acknowledges that "the record shows that [he] had a history of court involvement and that he had been unsuccessful in less restrictive placements and on community control," J.S. argues that the language the trial court used during the disposition hearing "shows that the Court was concerned primarily with punishing J.S. and treating J.S. like an adult, not furthering the goals of juvenile court."  (Appellant's Brief at 3).

{¶25} In support of his position that the trial court was focused solely on punishment, J.S. references several statements the trial court made at the disposition hearing.  First, after telling J.S. that DYS was his "last stop" before entering the adult criminal justice system, the trial court warned J.S. as follows:

> You're not going to fare well in the adult system.  You're a young boy from a rural area and you may think you're tough but when you go to big boy prison it's a whole new game.  You're going to be beaten, going to be raped inside the first week there, by the time it's over your anus is going to look like a glazed donut.  You understand what I'm saying? The difference is doughnuts don't bleed and you will.  It's going to be painful and it's going to be nasty * * *.

(June 7, 2019 Tr. at 24).

{¶26} The trial court then gave J.S. a specific example of a juvenile who died after entering the adult criminal justice system:

I have had a lot of clients * * * who have gone down [to the adult criminal justice system] at your age from rural Northwest Ohio and they fare much worse than city kids do because city kids who get sent have a tendency to be a lot harder core kids.  And a boy by the name of [J.D.] that I represented had a lot more street cred going down there than what you're going to have because he was in for first degree murder with a death sentence.  And inside of the first month he was the cause of a gang war because the leader of two different gangs wanted him for his woman, and by the end of the first year before his appeals [were] even over he ended up dead.  They found him with a bag over his head and his arms straight down to his side.  They called it suicide and there's no way in the world it was a suicide.  The leader of the gang that didn't get him decided if he ain't going to have him nobody else was.

That's the way you're going to end up if you don't change.  You can cry and whine all you want that DYS ain't going to help you and you're right because there's only one person in the world that can help you at this age and that's you.  You can go the way of [J.D.] or you

can do what you've got to do and straighten your butt up and act like

a man because you almost are.

(*Id.* at 25-26).

**{¶27}** While we do not condone the language and graphic examples employed by the trial court, we do not find that these statements, in the context of the record, demonstrate that the trial court was solely focused on punishing J.S. When considered in context, the trial court's statements appear to have been made with the intention of encouraging J.S. to cease engaging in criminal activities so that he does not enter the adult criminal justice system in the future. Accordingly, we do not find that the statements support J.S.'s position that the trial court's disposition was entered without reference to the overriding purposes of juvenile dispositions.

**{¶28}** Accordingly, the record indicates that the trial court made numerous previous, unsuccessful attempts to rehabilitate J.S. in less restrictive placements and employed a system of graduated sanctions and services. *See* R.C. 2152.01(A). Where all reasonable, less restrictive efforts failed, the juvenile court exercised its broad discretion in committing J.S. to DYS. *In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, at ¶ 20 (holding that it would have been contrary to R.C. 2152.01(A) for the juvenile court to continue to order the same sanction "despite escalating and dangerous criminal behavior"). The trial court's disposition was reasonably calculated to serve the purposes of R.C. 2152.01(A) and did not amount to an abuse

of discretion. *See In re D.C.*, 2019-Ohio-4860, at ¶ 44-46; *In re R.E.*, 8th Dist. Cuyahoga No. 100954, 2014-Ohio-3595, ¶ 18 (holding that the trial court did not abuse its discretion by committing the delinquent child to a term in DYS where the child "repeatedly failed to comply" with less restrictive efforts).

**{¶29}** Accordingly, J.S.'s assignment of error is overruled.

**{¶30}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**