[Cite as *In re. D.H.*, 2022-Ohio-1972.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

In re D.H.

Court of Appeals No.  E-21-029

Trial Court No.  2021 JF 044

## DECISION AND JUDGMENT

Decided:  June 10, 2022

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Brian A. Smith, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, D.H., a minor, appeals the August 13, 2021 judgment of the Erie

County Court of Common Pleas, Juvenile Division, in which he was adjudicated a

delinquent child and committed to the legal custody of the Department of Youth Services

("DYS") for an indefinite term ranging from a minimum of six-months and not later than his attainment of twenty-one years of age. For the following reasons, we affirm the trial court's judgment.

## A. Facts and Procedural Background

{¶ 2} On June 13, 2021, appellant was involved in an altercation that resulted in the death of T.T., a minor. On that date, appellant attended a party with two of his friends at a residence on Erie Street in Sandusky, Erie County, Ohio. While appellant and his friends were standing on the porch, he heard a glass break inside. Appellant and his friends entered the residence to find T.T. and several other individuals arguing. Appellant's friend, J.O., began arguing with T.T. about disrupting the party. As the verbal altercation escalated, appellant pulled out a firearm and pointed it at the individuals inside. Appellant told them to "just come outside, we're going to fight about it."

{¶ 3} Appellant, his friends, T.T., and T.T.'s friends proceeded outside where they continued their verbal altercation. Appellant called his brother on the phone telling him there was going to be a fight and asking him to "pull up" to join the fight. Appellant's brother arrived approximately three minutes later and began a physical altercation with T.T.

{¶ 4} During the fight with T.T., appellant's brother broke his arm. Appellant stepped in and attempted to strike T.T. T.T. then stepped back from the fight and appellant and his brother began to walk away. As they did, appellant looked back and

2.

saw his friend, J.O., shoot T.T. Appellant and his brother began running toward his brother's car. Appellant fired a shot from his own firearm in the direction of the altercation to assist in their escape. As appellant and his brother ran, J.O. shot T.T. again. Upon reaching the car, appellant and his brother placed their own firearms into the trunk and drove home. T.T. died as a result of the gunshot wounds.

{¶ 5} After arriving home, appellant's mother attempted to take appellant's brother to the hospital for treatment of his broken arm. She declined to enter the hospital as there was a significant police presence. Appellant, his brother, and his mother then drove around for several hours looking for a hotel to spend the night. They were unable to find an available vacancy and returned home. Officers from the Sandusky Police Department arrived approximately 20 minutes later and arrested appellant.

{¶ 6} On June 14, 2021, the Sandusky Police Department filed a complaint pursuant to Juv.R. 10 alleging D.H. was a delinquent child as he was complicit in T.T.'s murder in violation of R.C. 2903.02 and R.C. 2923.03. The complaint was assigned Erie County Court of Common Pleas, Juvenile Division case No. 2021-F-041. The offense alleged would have been an unclassified felony had it been committed by an adult.

{¶ 7} On June 29, 2021, the Sandusky Police Department filed a subsequent complaint pursuant to Juv.R. 10 alleging D.H. was a delinquent child as he participated in disorderly conduct with four others for the purpose of committing or facilitating the commission of an offense of violence, constituting aggravated riot in violation of R.C. 2917.02(A)(2). The second complaint was assigned Erie County Court of Common

3.

Pleas, Juvenile Division case No. 2021-F-044.  The offense alleged would have been a 4th-degree felony had it been committed by an adult.  Appellant appeared for an adjudication hearing pursuant to Juv.R. 29 later that day.

{¶ 8} At the hearing, the state indicated that it had negotiated a plea agreement with appellant and that the delinquent child complaint alleging appellant violated the aggravated riot statute was filed as part of that agreement.  The remaining terms of the agreement were that appellant would admit to his delinquency regarding the aggravated riot offense.  In exchange for his admission, appellant was required to provide testimony against J.O. in the state's prosecution of him for T.T.'s murder.  Appellant was also required to provide testimony in an unrelated murder in New Jersey where he previously lived.  Upon satisfaction of the terms of the agreement, the state would ask the trial court to dismiss the complicity to murder charge against appellant.  The trial court expressed reservations over the terms of the plea agreement and whether it would be accepted.

{¶ 9} T.T.'s mother was in attendance at the disposition hearing and was offered the opportunity to comment on the plea agreement pursuant to R.C. Chapter 2930—Ohio's victim's rights statute.  T.T.'s mother stated that she did not understand why appellant was not admitting to the complicity to murder allegation or the impact of the plea agreement on further prosecution of her son's murder.  To provide her with an opportunity to discuss these issues with the prosecutor, the trial court ordered the adjudication hearing continued to July 7, 2021.

4.

{¶ 10} At the resumed hearing, the trial court confirmed with T.T.'s mother that she had spoken with the prosecutor and understood the terms of the plea agreement. The trial court then identified, at length, its specific concerns over the terms of the plea agreement both in regard to its leniency and the danger to appellant for testifying against others in the prosecution of serious offenses. Despite these issues, the trial court accepted appellant's admission and appellant was adjudicated a delinquent child for committing the offense of aggravated riot. The matter was set for a disposition hearing on August 10, 2021.

{¶ 11} At the disposition hearing, the trial court again expressed concerns with the terms of the plea agreement. Specifically, the trial court stated that appellant's conduct likely satisfied the elements of the original complicity to murder offense and that it was concerned that allowing appellant to enter a plea to a less serious charge "sent the wrong message" to the community regarding the danger of firearms. Notwithstanding those concerns, the trial court proceeded with appellant's disposition on the aggravated riot offense. As part of that disposition, the trial court committed appellant to the legal custody of the Department of Youth Services for an indefinite term ranging from a minimum of six-months and not later than his attainment of twenty-one years of age pursuant to R.C. 2152.16(A)(1)(e).

## B. Assignment of Error

{¶ 12} Appellant timely appealed the trial court's order and asserts the following error for our review:

> The trial court's disposition of appellant was an abuse of discretion.

## II. Law and Analysis

{¶ 13} A juvenile division's resolution of a delinquency complaint against a minor consists of an adjudication of the minor as delinquent and the disposition of that finding through the assessment of a penalty imposed under R.C. 2152.16. *In re. Sekulich,* 65 Ohio St.2d 13, 14-15, 417 N.E.2d 1014 (1981). Once a penalty is imposed, the judgment constitutes a final, appealable order that is subject to review by this court. *Id.*

{¶ 14} Trial courts have "broad discretion to craft an appropriate disposition for a child adjudicated delinquent." *In re. D.S.,* 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, ¶ 6. The court exercises this discretion because it "has the opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and *to evaluate all the circumstances involved.*" *In re. Caldwell,* 76 Ohio St.3d 156, 160-161, 666 N.E.2d 1367 (1996) (emphasis added). To evaluate these circumstances, "the juvenile court considers not only the delinquent act but the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile and other societal factors[.]" *In re. J.S.,* 3d Dist. Hancock Nos. 5-19-22, 5-19-23, 5-19-24, 2020-Ohio-3413, ¶ 13, *citing Caldwell* at 160.

6.

**{¶ 15}** Juvenile dispositions are guided by the purposes identified in R.C. 2152.01(A) which states:

> The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. These purposes shall be achieved by a system of graduated sanctions and services.

R.C. 2152.01(B) requires that juvenile dispositions "shall be reasonably calculated to achieve the overriding purposes set forth in [R.C. 2152.01(A)], commensurate with and not demeaning to the seriousness of the delinquent child's * * * conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children[.]" The trial court is permitted to consider not only the act committed but "all the circumstances involved" to determine the appropriate disposition to achieve these purposes. *Caldwell* at 160.

**{¶ 16}** "The court's disposition will be upheld unless there has been an abuse of discretion." *D.S.* at ¶ 6. "An abuse of discretion is more than an error of law or judgment; it implies an attitude by the court which is arbitrary, unreasonable or unconscionable." *In re. Estate of Riddle,* 6th Dist. Wood No. WD-21-041, 2022-Ohio-644, ¶ 20, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

7.

{¶ 17} Appellant argues that the trial court abused its discretion in the disposition order because his commitment to the legal custody of DYS was based on the trial court's stated displeasure with the terms of the plea agreement rather than its consideration of the R.C. 2152.01(A) purposes of juvenile dispositions. Essentially, appellant argues that the trial court based its disposition order on its frustration with the state in agreeing to the terms of the plea agreement rather than the R.C. 2152.01 purposes of juvenile disposition.

{¶ 18} In support of this argument, appellant notes that the trial court engaged in a lengthy dialogue with the state during his July 7, 2021 admission hearing regarding the plea agreement, stating to the prosecutor:

I do worry about the message to the community, that guns don't matter, I guess. You know, I even wondered is this really full—full justice for the victim to be honest with you[.] I really got questions about that[.]

The trial court also noted that it planned to meet with the prosecutor's office to discuss the acceptable terms of future plea agreements. However, despite these statements, the trial court accepted the plea agreement at the conclusion of the hearing. At the disposition hearing, the trial court again stated its concerns over the terms of the plea agreement—at one point disputing the state's conclusion that the facts did not support the original complicity to murder offense.

{¶ 19} Based on these statements, appellant claims that the trial court's disposition resulted from bias towards him based on the court's alleged focus on the terms of the plea agreement rather than the purposes of juvenile disposition. By failing to consider the

8.

statutory purposes of juvenile dispositions, he argues, "the trial court acted in an unreasonable, unconscionable, and arbitrary manner" in committing him to the legal custody of DYS.

{¶ 20} While appellant correctly notes that the trial court expressed concerns over the terms of the plea agreement, along with its opinion that the underlying facts supported the originally alleged complicity to murder offense, the record does not show that the trial court focused on those concerns in determining the appropriate disposition in this case. Instead, the record reflects the trial court's careful consideration of the R.C. 2152.01(A) purposes of juvenile dispositions.

{¶ 21} At the disposition hearing, the trial court explained to appellant the serious nature of the admitted offense and that he must be held accountable for his conduct as described in R.C. 2152.01(A) stating:

DYS [is] the way to go. You know, if I look at this, it's the [worst] form of the offense, okay? It's the [worst] form of an aggravated riot, resulted in the death of somebody.

* * *

[Y]our active participation is really, you know, and the resulting act of that active participation—you set it all in motion—was the death of somebody. So you are going to be responsible for that. And that does tell me that the consequence, the disposition does need to be more serious. It does need to be more serious than less serious[.]

9.

{¶ 22} In addition to holding appellant accountable for his conduct, the trial court noted that appellant's commitment to DYS and his subsequent supervision upon his release precluded appellant from being "around guns." The trial court explained the importance of preventing appellant from accessing a firearm because "[t]he people carrying the guns" were "creating havoc in our communities." The trial court's consideration of appellant's ability to continue carrying a firearm and the potential danger to the public in determining the appropriate disposition comports with the protection of the public safety and interest purpose of juvenile disposition established in R.C. 2152.01(A).

{¶ 23} The trial court also described, at length, its consideration of appellant's care, protection, mental and physical development, as well as the potential for appellant's rehabilitation while committed to DYS. The trial court first described the conduct it sought to rehabilitate stating:

> Carrying a gun is a conscious decision, [D.H.]. It's not an impulsive
>
> decision. It's not something made in the heat of the moment. Cracking off
>
> a couple shots or throwing the gun in somebody's face when tensions start
>
> to rise. That's impulsive.
>
> But had you not made that conscious decision to have a weapon on your
>
> body, you wouldn't have the opportunity to make that impulsive decision.
>
> You wouldn't have had to make that impulsive decision at the—around the
>
> time of the shooting[.]

10.

The trial court then explained the programming appellant would be required to take part in during his commitment to DYS to help appellant deal with his impulsive decisions and to achieve that rehabilitation stating:

> [W]hile you are in the Department of Youth Services I am ordering that you obtain and complete alcohol and other drug treatment[.] It was very clear from your description and from the police report that there was a lot of drinking going on. * * * I'm also going to order that you comply and complete, or obtain and complete thinking others programming, also known as T4C, and anger management programming.
>
> Those are the only things that I see as potentially, not directly—well, thinking here is certainly directly, but anger placement therapy is probably something a little indirect given the circumstances.
>
> But I think those are my attempts to identify some areas to try to assist you in the future.
>
> * * *
>
> [These programs are] not designed to deal with a thought out antisocial decision. They're made to deal with somebody who is impulsive, somebody who is amenable to changing their idea about what's right and what's wrong in the circumstances they've put them in.

These statements plainly reflect the trial court's consideration of the remaining purposes of juvenile disposition in that it sought to provide appellant with the appropriate care,

protection, mental, and physical development as well as the most appropriate rehabilitative services as described in R.C. 2152.01(A).

{¶ 24} In sum, we find that the trial court considered the R.C. 2152.01 purposes of juvenile disposition when it committed appellant to the legal custody of DYS. Appellant's argument that the trial court's stated displeasure with the terms of the plea agreement resulted in a disposition based on those concerns only rather than the statutory purposes of juvenile disposition is not reflected in the record. Therefore, the trial court did not abuse its discretion in committing appellant to DYS and his assignment of error is found not well-taken.

### III. Conclusion

{¶ 25} We find the appellant's assignment of error not well-taken. We therefore affirm the August 13, 2021 judgment of the Erie County Court of Common Pleas, Juvenile Division.

{¶ 26} Appellant is ordered to pay the costs of this appeal pursuant to App.R.24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                     _____
                                                    JUDGE

Thomas J. Osowik, J.


Gene A. Zmuda, J.                         _____
CONCUR.                                                  JUDGE


                                                    _____
                                                    JUDGE


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.


13.